GREGORI PERI

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

| 65 | 17 |
| 136 | 657 |
| 65 | 17 |
| 175 | 233 |
| 65 | 17 |
| 182 | 419 |
| 65 | 17 |
| 187 | 10246 |

1. CRIMINAL COURT OF COOK COUNTY—*selection of grand and petit jurors.* The laws relating to the Recorder's court of Chicago required that jurors for such court should be selected from the tax-payers of said city. The new constitution continued this court under the name of the Criminal Court of Cook county, and invested it with the same criminal jurisdiction as a circuit court in all cases arising in Cook county: *Held,* that the effect of this constitutional provision was to repeal the mode of selecting jurors, and to require them to be selected from the body of the county, the same as in the circuit court.

2—65TH ILL.

Syllabus.

2. VENIRE FOR JURY—*presumption in favor of.* On error in a criminal case, it was objected that the court below had no power to try the accused, because the record failed to show any order of the court directing the clerk to issue the *venire* for the jury of the term. The writ was under seal, and regular on its face, and no motion was made to quash it, or challenge made to the array, and the record showed that the jury who tried the accused were elected and accepted by him as good and lawful men: *Held,* from these facts, that it must be presumed that the writ was authorized by the order of the court, and properly issued, or that an exception would have been taken, and the facts upon which it was based preserved in the record.

3. CRIMINAL PRACTICE—*in case of several convictions.* When the people have obtained verdicts against an individual on several criminal charges, they may have judgment on each, or may abandon such as they choose, and have judgment on the others.

4. So when a prisoner had been tried and a verdict found against him of murder, and fixing his punishment by imprisonment for life in the penitentiary, and he was again tried on another charge of murder, and found guilty, and the death penalty awarded: *Held,* that the court had the power and right to render judgment and sentence in the last case, without judgment and execution in the first.

5. MURDER—*malice—when implied.* In the case of a homicide, in the absence of apparent well founded danger of great bodily harm, or such provocation as is calculated to excite irresistible passion, the law will imply malice.

6. SAME—*time for deliberation not essential to malice.* To constitute malice aforethought, it is not necessary that the party should brood over and meditate upon the performance of the act for a considerable space of time; but it is sufficient if it were deliberate and intentional without apparent well founded danger of great bodily harm, or where there is not such provocation as in law reduces the killing to manslaughter.

7. Although there may be but a short space of time in which to form a deliberate purpose, yet where the circumstances were not such as to create a well founded apprehension of great bodily harm, so as to justify the killing, or there was not such a provocation as to produce an irresistible passion so as to reduce the killing to manslaughter, the law will presume that the accused acted with sufficient deliberation, or with such a total disregard of human life as to create the presumption of general malice.

8. SAME—*instruction as to malice in act.* On the trial of one for murder, the court instructed the jury that, if they believed from the evidence certain named facts, and that defendant then and there deliberately and intentionally stabbed the deceased, etc., as charged in the indictment, from which death ensued, they should find the defendant guilty. It was urged

against the instruction that it did not require the jury to find that the killing was done with malice aforethought; but it was *held*, that, as the question of malice was not left doubtful by the evidence, the instruction was not misleading, the other instructions fully explaining the difference between murder and manslaughter.

9.. CRIMINAL LAW—*instruction—reasonable doubt.*  While it is the general and no doubt the fairer and better practice in the people's instructions to instruct the jury that they must believe the defendant's guilt, etc., beyond a reasonable doubt, and while the omission of those words in all the instructions would doubtless be error, yet where the defendant has the full benefit of this principle of law in the instructions given in his behalf, it will not be error that the people's instructions do not require the jury to believe the necessary facts beyond a reasonable doubt.

10.  INSTRUCTION—*in criminal case.*  Instructions should not be vague and indefinite, but so clear as to leave no reasonable doubt as to what they refer to; neither should they assume facts which are for the jury to find.

11.  While, as a general rule, the court may properly refuse instructions which are not correct, yet in a capital case, and in fact in all criminal cases, it is the duty of the presiding judge to see that the law is fully and fairly given to the jury, that they may act intelligently in forming their verdict, and consequently it is not error to modify instructions asked, so as to present the law of the case fully and fairly.

12.  NEW TRIAL—*finding on the facts.*  An appellate court is always reluctant to reverse because a verdict is not supported by the evidence, unless it seems clearly wrong, for the reason that the court below is the best judge of the facts, from his opportunity of seeing the witnesses on the stand, and hearing them testify, and, from their appearance and manner, to form an accurate estimate of the character of the witnesses, and the worth of their evidence.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

This was an indictment against Gregori Peri for murder, in the killing of Daniel O'Brien.

The court gave the following instruction, among others, for the people:

"1st.  The court instructs the jury that, if they believe, from the evidence, that the defendant, at the time of the alleged killing of Daniel O'Brien, was the keeper of a public saloon and restaurant, as described by the evidence, and that the said

O'Brien, with others, peacefully entered said saloon to procure some oysters, and did peacefully procure and eat the same in said saloon, and that said O'Brien, with Ready and Burke, peacefully stood at the counter of defendant to pay for the same, and that the defendant accused said Burke of breaking a light of glass, and that said Burke denied such charge, and that Ready then said he would pay for it, and have no trouble, and that he did then pay for it and the refreshments they had received, and that a dispute with mere words then arose about the change Ready should receive from the defendant, and that a dispute of mere words continued between said Burke and the defendant about the alleged breaking of the light of glass, and that the defendant thereupon, and for no other cause, seized a deadly weapon, to-wit, a knife, and held it in a threatening manner, with the apparent intention of assaulting said Burke with said deadly weapon, and that Ready thereupon then and there peacefully remonstrated with said defendant, with words, against using said deadly weapon upon said Burke, and that Ready then only peacefully endeavored to prevent said defendant from using said deadly weapon upon said Burke, and that said O'Brien then and there merely stood at the counter of the defendant as a spectator, in a peaceful manner, and did not make or attempt to make any assault or attack upon said defendant, and did not use or attempt to use any violence upon said defendant, and that the said defendant then and there deliberately and intentionally stabbed said O'Brien with said deadly weapon, to-wit, a knife, in the abdomen of said O'Brien, in manner and form as charged in the indictment, and that said O'Brien died from the effects of such stabbing, then the defendant is guilty of willful murder, and the jury should find him guilty of murder."

The court refused the following instructions asked by the defendant:

"11. The jury are instructed that, although the intent to commit the crime of murder may be formed at the instant of

striking the blow, yet the jury must believe from the evidence, before they should convict of murder, that that instant must occur in an interval between the assault and provocation, sufficient for the voice of reason and humanity to be heard."

"12. There must be an interval between the assault and the provocation sufficient for the voice of reason and humanity to be heard, provided the jury believe there was an assault and provocation."

Mr. A. VANBUREN, for the plaintiff in error.

Mr. CHARLES H. REED, State's Attorney, for the people.

Mr. JUSTICE WALKER delivered the opinion of the Court:

At the December term, 1871, of the criminal court of Cook county, the grand jury found an indictment against plaintiff in error, charging him with the murder of Daniel O'Brien. After the cause was twice continued, it was tried at the April term, 1872, and resulted in a verdict of murder, and the jury fixed death by hanging as the penalty. When the jury returned their verdict, plaintiff in error entered a motion for a new trial, which was subsequently overruled, and at the same term the court rendered judgment on the verdict, and sentenced the accused to be hanged; and the case is brought to this court on error, and various grounds are urged for a reversal.

The first urged is, that the court had no power to try the prisoner, because there was no order of the court directing the clerk to issue a writ of *venire* for the jury which tried accused.

So far as we can see, no such order appears in the record brought to this court. But when there is such a writ issued by the proper officer, under the seal of the court, regular in all respects, so far as we know from this record, and as no motion was made to quash the writ and to challenge the array, we must presume that the writ was authorized, and the

proper order was made. Such an order was, we must con-
clude, general for a jury for the term, and not special for this
particular case, and in making the transcript the clerk would
probably not, unless required, embody it in the transcript.
There is not enough appearing in this case to overcome the
presumption that the writ was regularly issued.

Again, the jury were elected and tried by accused, and ac-
cepted by him as lawful men, without making this objection.
From this we must presume that the objection did not in fact
exist, or an exception would have been made, and the facts
upon which it was based have been preserved in the record.
We are unable to say that this was error.

After the jury had returned their verdict, plaintiff in error
entered an objection against the court proceeding further with
the case, because he had been, as he alleged, tried at a former
term of the court on a charge of having murdered one
Michael Ready, and was, on that trial, found guilty of mur-
der; and that the verdict in that case fixed his punishment by
confinement in the penitentiary during his natural life. It
was also said, in the reasons filed, that this indictment grew
out of the same affray, and the homicide charged was a part of
the same transaction, and that accused had not been sentenced
under the prior verdict; and it is urged that the court had no
power to render judgment on the verdict in this case until
after judgment should be rendered and execution had on the
verdict on the former trial.

This record contains no evidence that such a trial was ever
had or verdict found. But if it did, that would constitute
no valid reason for refusing to render judgment on this ver-
dict. It is not pleaded, nor could it be, as a former judgment
in bar of this proceeding, and there can be no doubt that,
where the people have obtained verdicts against an individual
on several criminal charges, they may have judgment on each,
or may abandon such as they choose, and have judgment on
the others. If the people so desired, they were at liberty to

---

Opinion of the Court.

---

abandon the verdict on the previous trial, if one was ever had, and have a judgment and execution on this.

There is nothing in the record upon which to base this objection, and the reasons suggested by plaintiff in error being unsupported by any proof, we fail to see any ground upon which it can be based.

Overruling the motion for a new trial is earnestly urged as an error that should reverse the judgment.

The ground assigned for a new trial, that the court refused to quash the indictment, seems to have been abandoned, as no reasons therefor are suggested in argument. We fail to see that there are any objections to it, either in substance or in form. It therefore follows that this ground was properly disregarded by the court below.

As to the question whether the evidence supports the verdict, from a careful examination of all that is contained in the record, we are satisfied that it is sufficient. Whilst it appears that there was but a short space in which to form a deliberate purpose, still, when we can see no such assault as to create a well founded apprehension of great bodily harm, or such provocation as was calculated to produce an irresistible passion on the part of plaintiff in error, as would justify the homicide, or reduce it to manslaughter, we must conclude accused acted with sufficient deliberation, or with such a total disregard for human life as to create the presumption of general malice.

In the absence of apparent well founded danger of great bodily harm, or such provocation as is calculated to excite irresistible passion, the law implies malice. And in this case the jury were warranted, from the evidence, in so finding, and if there was malice aforethought, then the homicide was murder.

To constitute malice, it is not necessary that the party should brood over and meditate upon the performance of the act for a considerable space of time; but it is sufficient if it were deliberate and intentional, without apparently well founded danger of great bodily harm, or where there is not

such provocation as in law reduces the homicide to manslaughter; and the jury, as practical men, [must determine whether the act was so deliberately done as to show that there was the steady fixed purpose that proceeds from malice.

Again, the motion for a new trial was addressed to and considered by the judge who tried the cause. He saw all of the witnesses on the stand, heard them testify, and from their appearance, intelligence and manner, had full opportunity to form an accurate estimate of the character of the witnesses, the worth of their evidence, and the true nature of the charge against the prisoner. On the other hand, we, as an appellate court, only see the language used by the witnesses as it appears on paper, and are deprived of much that always enables those present to judge more accurately of the weight of evidence than others who only see it reported. For this reason the appellate court is reluctant to reverse because a verdict is not supported by the evidence, unless it seems to be clearly wrong.

The judge who tried this case has solemnly said, by overruling this motion, that he believes, beyond a reasonable doubt, that accused was guilty of murder, otherwise he would have granted a new trial; and a majority of the court, after considering the entire evidence as it appears in the record, can not say that he erred.

It is urged that the first of the people's instructions was wrong, because it fails to inform the jury that they must believe the facts supposed in the instruction to be true beyond a reasonable doubt, before they could find the accused guilty. The law declares the jury must believe the defendant, in all criminal cases, to be guilty beyond a reasonable doubt, before they can convict. The law has always given the prisoner the benefit of such a doubt, and if the jury were not so instructed, it would no doubt be error. And the practice is believed to be general for the court to so state the law in the people's instructions, and such is no doubt the fairer and better practice.

But was its omission from the people's instructions in this case an error?

On a careful examination of the instructions, we find that by the fifth of defendant's instructions the jury are told that unless they believe beyond a reasonable doubt that the defendant is guilty, they should acquit; and they are so informed in his sixth, and what constitutes a reasonable doubt is explained in the seventh. These instructions were all given, and we can not, after so plain a direction on the part of the court, believe that the jury disregarded them.

In the case of *Kennedy* v. *The People*, 40 Ill. 498, it was held that if the jury were properly instructed as to a reasonable doubt in a portion of the people's instructions, it was not error to omit that expression in others given for the prosecution. In principle, this case is like that, and we are unable to distinguish them. Nevertheless, if we were not satisfied with the finding, or should believe the accused had not had a fair trial, we should probably conclude that the want of such a direction in each of those given for the prosecution had led to the unsatisfactory result.

It is again urged against that instruction, that it fails to inform the jury that they must believe that accused killed deceased, with malice aforethought, before they could find him guilty of murder. The instruction requires them to believe that the homicide was deliberately and intentionally perpetrated, in manner and form as charged in the indictment. Where there is no reasonable doubt that there was malice, such an instruction would not mislead; but in cases of doubt, it might be otherwise. In this case, what constituted the crimes of murder and manslaughter was explained to the jury in other instructions, and on the entire record we fail to see that the jury were misled as to what the law regards as to the malice necessary to murder, and what constitutes manslaughter.

We have turned to the record, and read all of the instructions given for defendant below, and are unable to find that

the law was not fairly given by them, as they were modified. As drawn, they were inaccurate, and should not have been given without the modifications that were made. The court, no doubt, might have simply refused to give them; but in a capital case, in fact in all criminal cases, it is the duty of the judge trying them to see that the law is fully and fairly given to the jury, that they may act intelligently in forming their verdict. From a careful consideration of all the instructions given in the case, we are unable to say that the jury were not properly instructed, and we are of opinion that no error intervened in giving the instructions.

Nor do we see that the court erred in refusing to give the 11th and 12th instructions asked by defendant below. If for no other reason, because they find there was an assault and provocation, when they were facts for determination by the jury. Again, they are vague in not informing the jury who they should find had committed the assault and given the provocation; whether accused or deceased. Instructions should be so clear as to leave no reasonable doubt as to what they refer to.

Was there error in refusing a new trial because the grand or traverse jury came from the body of the county, instead of from taxable citizens of the city of Chicago? We will not determine whether objections of this character can be raised except as grounds to challenge the array. Did the law require them to be selected from the tax-payers in the city of Chicago, as had been required in the recorder's court before the criminal court was established? The 26th section of article 6 of the new constitution declares, "that the recorder's court of the city of Chicago shall be continued, and shall be called the 'Criminal Court of Cook county.' It shall have the jurisdiction of a circuit court, in all cases of criminal and *quasi* criminal nature, arising in the county of Cook, or that may be brought before said court pursuant to law."

This provision of the constitution invests this court with the same jurisdiction of a circuit court; and all the circuit

courts of the State have, and always had, the power to bring their juries, both grand and traverse, from the body of the county in which such a court is held. No one can question this. It then follows that the criminal court became, by force of this provision, invested with the same power. If it be said that the law conferring the jurisdiction and regulating the practice of the recorder's court required juries for that court to be selected from the tax-payers of the city of Chicago, the answer is obvious, that this provision of that law, being repugnant to the power granted to this court by the constitution, was repealed by that instrument, and that part of the law must give way to its provisions. Whilst some of the provisions of that act may have been still in force, we must hold this one repealed, and in the obtaining of juries for the criminal court, it must be governed by the law regulating the qualifications of jurors, and the mode of their selection, and the manner in which they are summoned for circuit courts. There was, therefore, no error in bringing the jurors, having the same qualifications, from the body of the county, as is required for the circuit courts.

After a careful examination of this entire record, we fail to find any error; and we are satisfied that plaintiff in error has had a fair trial and was properly convicted, and the judgment of the court below must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT. dissenting:

I dissent from the judgment of the majority of the court, on two grounds—

*First.* In my judgment, the facts in evidence leave it doubtful whether the accused is guilty of the crime of murder or only manslaughter. I can not say that the evidence leaves no reasonable doubt on my mind as to whether the homicide amounts to the crime of murder.

Mr. JUSTICE McAllister and Mr. CHIEF JUSTICE LAWRENCE, dissenting.

*Second.* In this view of the evidence, the first instruction given on behalf of the people was highly calculated to mislead the jury. The instruction recites the main facts proven by the prosecution, and the jury are told that if they believe those facts—not beyond a reasonable doubt—they will find the accused guilty of murder. It leaves out of view the extenuating facts in evidence that tend to the benefit of the defendant; and in this regard it was erroneous. It is only from the consideration of the entire evidence that the jury would be authorized to make up their verdict as to the guilt of the defendant.

The instruction is itself in an objectionable form. If the court undertakes, by an instruction, to direct the attention of the jury to the evidence in the case, upon which they would be authorized to find a verdict, it should direct their attention to the entire evidence; as well that which is in favor as to that which is against the accused.

In my opinion, the judgment should be reversed.

Mr. JUSTICE McAllister, dissenting:

I can not concur in the opinion of the majority of the court.

There was enough in the circumstances in evidence to make it fairly questionable whether the homicide was not committed under provocation and in the heat of passion. Such being the case, the first instruction asked by the public prosecutor, and given by the court, was objectionable. It purports to incorporate facts, but excludes everything that might be urged on behalf of the accused, and does not require those hypothetically submitted to be found true beyond a reasonable doubt, and there is nothing in any instruction on behalf of the people to cure the defect.

Mr. CHIEF JUSTICE LAWRENCE, dissenting:

I concur with Mr. JUSTICE SCOTT and Mr. JUSTICE McAllister.