BENJAMIN McCoy

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1898.*

1. CRIMINAL LAW—*verdict of conviction not lightly disturbed on appeal.* The law having placed the determination of the guilt of the accused in the hands of the jury, it is only when the Supreme Court is satisfied, from a careful consideration of the whole testimony, that there is a reasonable doubt of the guilt of the accused, that it will set aside the verdict as not warranted by the evidence.

2. SAME—*instruction must be considered with reference to other instructions on the same subject.* In determining the propriety of giving an instruction it must be considered in connection with others upon the same subject, and if the law has been fairly presented the Supreme Court will not reverse because the instruction objected to does not contain all the law on the subject, unless the peculiar circumstances of the case render the instruction misleading.

3. Same—*previous threats against deceased by accused are competent, as showing animus.* Threats against the deceased by the accused shortly before the homicide are admissible in evidence for the purpose of showing animus, it being for the jury to determine whether they were the result of momentary anger, or were the expression of a deliberate intention.

4. Same—*when proper for jury to take revolver and bullet on retirement.* It is proper in a murder trial for the court to permit the jury, on retirement, to take the bullet removed from the body of the deceased and the revolver belonging to the accused, where both are in evidence, and no specific objection is made that the revolver has not been identified as the one used in firing the shot.

5. The court reviews the evidence in this case at length, and considers the objections to instructions, and holds that there was no substantial error committed in instructing the jury and that the evidence fully warranted the verdict.

Writ of Error to the Circuit Court of McLean county; the Hon. Colostin D. Myers, Judge, presiding.

Frank Gillespie, and A. W. Peasley, for plaintiff in error.

E. C. Akin, Attorney General, and R. L. Fleming, State's Attorney, (O. R. Trowbridge, of counsel,) for the People.

Mr. Justice Craig delivered the opinion of the court:

Wilbur McCoy and the plaintiff in error, Benjamin Mc-Coy, were jointly indicted and tried in the McLean circuit court for the murder of John Bullock, the trial resulting in the acquittal of Wilbur McCoy and the conviction of Benjamin McCoy. Motions for a new trial and in arrest of judgment having been overruled, the court, in pursuance of the verdict of the jury, entered judgment on the verdict and sentenced Benjamin McCoy to imprisonment in the penitentiary for fourteen years. He brings this writ of error, and asks to have the judgment reversed.

Plaintiff in error contends that the evidence will not sustain the judgment of conviction against him. The evidence in the record shows substantially the following

facts: The two defendants, Wilbur McCoy and Benjamin McCoy, were aged, respectively, twenty-one and nineteen years, and lived with their father in Shirley, a small town in McLean county, Illinois, on the line of the Chicago and Alton railroad. At the time of the homicide the deceased, John Bullock, (sometimes called John Smith,) and plaintiff in error, Benjamin McCoy, both worked for J. L. Douglass on his farm close to Shirley. It appears there were several young men living in Shirley who frequently congregated at the railroad depot in the evening. On the evening of the homicide it was wet and misting. There was a church festival at a house not far from the depot, and deceased was dressed to attend the festival. He came into the depot waiting-room shortly after eight o'clock, and was waiting for his employer's son to bring him some money. The platform lamp hung between the window and the waiting-room door. There was a target light and another light outside, a light in the office room and a lamp was on a shelf in the waiting-room. One door opened into the ticket office and there were two outside doors to the waiting-room, and one window opening on the platform and a south window. There was a pile of car doors at the south end of the depot, about five feet high. There was at that time almost incessant lightning. There is an elevator opposite the depot. The light of the platform lamp was thrown against the elevator, and a person passing between the elevator and depot could have been recognized. Shortly after Bullock entered the waiting-room the witness Willie Dunk entered and saw Bullock, who was the only person there. Soon Wilbur McCoy and one Mack Roberts came in, followed by Nels Souders and Willie Zeigler. Bullock, in talking with Willie Dunk, said that one Bruno Warlitz had told lies on him, and that he could whip him and all his friends. On hearing this, Wilbur McCoy said that Warlitz had done nothing of the kind —that he attended to his own business. Bullock replied that he had told lies on him, and that he could whip War-

litz and all his friends.    Some further words passed, when
Nels Souders took Bullock by the arm and they went out
of the waiting-room together and walked to the south end
of the platform.    As Souders and Bullock went out, Benja-
min McCoy, plaintiff in error, came into the waiting-room
but immediately went out.    Souders and Wilbur McCoy
came out then with Mack Roberts.    Willie Dunk was on
the platform.    As Wilbur McCoy came out of the depot
he said to Bullock, "Now, if you want anything you can
get it right here."    He had gone about a quarter of the
way from the door to the corner of the depot.    Wilbur
McCoy and Bullock were near the edge of the platform.
Wilbur was facing the depot and Bullock was facing Wil-
bur, with his back towards the depot building.    Souders,
after entering the waiting-room, looked through the win-
dow and saw a person near Bullock and Wilbur.    A shot
was fired from behind, the bullet entering Bullock's head
three inches below and one-quarter of an inch back of the
opening of the left ear.    Death was produced instantly,
the body falling on the rail of the track.

The defendants introduced no testimony, but state-
ments made by the defendants after the homicide were
testified to by witnesses for the People.    The plaintiff in
error told the coroner, James Hare, that he was only about
four feet away when the scuffle began on the platform
between his brother, Wilbur, and Bullock; that the shot
came from behind; that he was that far away when Wil-
bur and Bullock went off the platform.    The wound was
powder-burned, showing the person who fired the shot was
close behind Bullock.    This admission of plaintiff in error
shows he was near enough to have fired the shot, and no
other person was proven to be near Wilbur McCoy and
Bullock.    Sally Anthony, on the Sunday evening after
the homicide, was walking with plaintiff in error.    She
testified he said to her, in substance, that he had been at
home until after supper, and came up with Shelby Newby
to the festival to get cream and take some home; that he

went over to the depot and went in; that the boys were talking; that pretty soon they went out on the platform; that he followed them out and stayed at the corner of the depot where the car doors were; that he heard them talking, and heard Smith (Bullock) quarreling with Wilbur; that Wilbur was his brother, and he said he had a right to help him; that before he reached them Smith (Bullock) fell on the track; that he expected they would watch him pretty close; that he didn't know who fired the shot, and he supposed it never would be known.

The only help Wilbur, the brother of plaintiff in error, received, as shown by the evidence, was from the person who fired the fatal shot. The admission of plaintiff in error that he helped him, in connection with the other circumstances in evidence; his proximity to the deceased; the fact that he was possessed of a borrowed revolver of the kind and caliber of the one with which Bullock was shot, and that he bought and paid for it after the homicide; the fact that within a few days before the shooting plaintiff in error used expressions showing ill-will towards Bullock, using the expression, "If he monkeys with me I will throw a ball at him," and at another time saying, when Bullock got angry at something, "If he monkeys with me I will fix him;" the fact that no weapon was found on deceased; the condition of the clothing on the body after deceased was shot, his overcoat being buttoned up, kid gloves on his hands and a button-hole bouquet on, which the witnesses stated looked as though just put on, which showed that there could not have been much of a scuffle, and certainly not one which required the use of a deadly weapon upon a person unarmed; the fact that Wilbur McCoy and the other young men present assisted to carry the body of deceased into the depot, while the plaintiff in error ran away from the depot and was not seen again that night,—must have satisfied the jury, beyond a reasonable doubt, of the guilt of Benjamin McCoy. All this testimony stands undisputed, and yet plaintiff in error

insists that the evidence is not sufficient to sustain a conviction. The law has placed the determination of that question with the jury, and it is only when this court is satisfied, from a careful consideration of the whole testimony, that there is a reasonable doubt of the guilt of the accused, that it will interfere with the verdict of the jury on the ground that the evidence does not support the verdict. (*Gainey* v. *People*, 97 Ill. 270.) We are satisfied the evidence sustains the verdict of the jury, and that the jury would have been justified in inflicting, under the evidence in the record, a much heavier punishment.

It is next insisted that the third instruction given on the part of the People is erroneous. It is as follows:

"Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. Malice is not confined to ill-will towards an individual, but is intended to denote an action flowing from any wicked and corrupt motive,—a thing done with a wicked mind,—where the fact has been attended with such circumstances as evince plain indications of a heart regardless of social duty and fatally bent on mischief; hence malice is implied from any deliberate or cruel act against another, however sudden, which shows an abandoned or malignant heart."

The objection is made that the words "*every other* unlawful and unjustifiable motive" broaden the instruction to include every motive, whether growing out of the evidence in the case on trial or not. We do not think the instruction is subject to the criticism. The instruction is a literal copy of one given in *Jackson* v. *People*, 18 Ill. 269, which was one of a series approved by this court.

The objection to the fourth instruction, that it does not require the intent to be shown beyond a reasonable doubt, is not tenable. The instruction, in the beginning, states that the intent in the indictment is necessary to be shown by direct and positive testimony, or it may be inferred from all the facts and circumstances shown by the evidence. It then expressly states, "that if you be-

lieve from the evidence, beyond a reasonable doubt, that the firing of the revolver was the act of the defendants, as alleged in the indictment, and that it was done deliberately and was likely to be attended with dangerous consequences, the malice or intent to make out the case as charged will be presumed."

Plaintiff in error complains of the People's thirteenth instruction as using the words "absolutely necessary." The People's eleventh instruction was a literal copy of section 148 of the Criminal Code. The thirteenth adopted the language of section 149. Undoubtedly this instruction, considered independently, and not as a part of a series of instructions, might be objectionable, as ignoring the doctrine of apparent danger, as held in *Campbell* v. *People*, 16 Ill. 17. In the case at bar the People's twenty-eighth instruction expressly told the jury they should take all the instructions together, and they were to be construed as one entire series. At the request of plaintiff in error the trial court gave the following, defendants' twelfth instruction:

"Actual or real danger is not indispensable to the defense of one's relatives. Persons threatened with danger, or their relatives, must judge from *appearances*, and determine therefrom the actual state of things surrounding them or their relatives. If such persons act from honest fears, induced by reasonable evidence, they are not responsible for a mistake as to the extent of danger."

This instruction expressly told the jury that "actual or real danger is not indispensable to the defense of one's relatives. Persons threatened with danger, or their relatives, must judge from appearances, and determine therefrom the actual state of things surrounding them or their relatives." This instruction, considered in connection with the other instructions, fairly presented the law to the jury. In *Gainey* v. *People, supra*, this court said (p. 277): "But it is a familiar doctrine that in passing upon a single instruction it must be considered in connection with

other instructions bearing upon the same subject, and if, when thus considered, it appears the law has been fairly presented to the jury, the court will not reverse because such instruction does not contain all the law relating to that particular subject, unless, under the peculiar circumstances of the case, the court is of opinion the jury may have been misled by it." *Kinney* v. *People*, 108 Ill. 519; *Appleton* v. *People*, 171 id. 473.

There was no error in giving the People's fourteenth instruction, under the foregoing authorities.

Objection is made to the People's twelfth instruction, in that it is claimed it directs the jury to find the defendants guilty of murder, instead of allowing them to pass upon the question whether the defendants were guilty of murder or of the lesser offense of manslaughter. The instruction is as follows:

"No provocation, by words only, addressed to the person killing or to another in his presence, however opprobrious, will mitigate an intentional killing so as to reduce the killing to manslaughter; and although the jury may believe, from the evidence, that opprobrious epithets were used by the deceased to the defendant Wilbur McCoy in defendant Benjamin McCoy's presence, yet if the jury further believe, from the evidence, beyond a reasonable doubt, that the defendants immediately or soon thereafter revenged themselves by the use of a dangerous and deadly weapon in a manner likely to cause the death of the deceased, and did thereby cause his death as charged, then the defendants are guilty of murder and the jury ought so to find, *unless* they shall further believe, from the evidence, that said killing was reduced to manslaughter, or was justifiable upon other grounds, or by other than the use by the deceased of such opprobrious language."

The objection is not well taken. This instruction obviates the objection urged, by adding the words, "unless they shall further believe, from the evidence, that said killing was reduced to manslaughter, or was justifiable

upon other grounds, or by other than the use by the deceased of such opprobrious language." Besides, the instruction is almost a literal copy of the instruction given in the series in the case of *Jackson* v. *People, supra,* which was approved by this court without the qualification contained in the foregoing instruction.

A similar objection is urged against the eighteenth instruction. The instruction begins, "If the jury believe, from the evidence, beyond a reasonable doubt," etc., and then recites certain facts which, if believed by the jury, must have excluded every possible element of manslaughter or self-defense: "And if you further believe, from the evidence, that Benjamin McCoy was then and there present, and that he knew that his brother, Wilbur McCoy, was not in danger of his life nor in danger of receiving great bodily harm, and that, knowing said facts, the said Benjamin McCoy interfered, and, with a deliberate mind and formed design to kill the deceased, did, with a revolver, shoot the deceased, then the defendant Benjamin McCoy is guilty of murder, and the jury should so find." The jury were instructed by the People's eighth and ninth instructions as to the statutory law concerning manslaughter, and were informed in the instructions as to the form of their verdict as to both murder and manslaughter, and were instructed in other instructions that the defendants could be found guilty of murder or of the lesser crime of manslaughter. Section 140 of the Criminal Code, defining murder and malice, was given, in the language of the statute, in the People's second instruction. This section defines express malice as follows: "Express malice is that *deliberate intention* unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof." The instruction in the case at bar requires the jury to believe that the homicide was *deliberately and intentionally done,* for it uses the words "with a deliberate mind and formed design to kill the deceased," which is, in effect, with malice aforethought, and

constitutes murder. In the case of *Peri* v. *People*, 65 Ill. 17, this court sustained an instruction which recited the facts in evidence, and which concluded, "then the defendant is guilty of willful murder, and the jury should find him guilty of murder." In this case the jury were instructed, in other instructions, that they could find the defendants guilty of murder or could find them guilty of manslaughter, and could not have been misled.

It is insisted that the trial court erred in refusing defendants' first, second, twelfth and thirteenth instructions. The first and second refused instructions are embodied substantially in the twenty-sixth, twenty-seventh and seventh of defendants' given instructions. The defendants' seventh modified instruction was as follows:

"When a man's conduct may be as consistently and as reasonably, *from the evidence*, be referred to one of two motives, one criminal and the other innocent, it is your duty to presume that such conduct is actuated by the innocent motive, and not the criminal."

This covered sufficiently the idea embraced in the twelfth refused instruction. The thirteenth refused instruction is, in effect, that if there is a reasonable doubt in the minds of the jury as to which one of several persons or which one of the defendants fired the fatal shot, then they must acquit the defendants. The seventh instruction given for the defendants covers substantially the same legal principle,—that if the shot was fired by one of a crowd, or if the jury had any reasonable doubt, from the evidence, as to who fired it, their verdict should be not guilty.

The threats made by plaintiff in error shortly before the homicide, against deceased, were competent for the purpose of showing the animus with which the killing was done, and that an unfriendly feeling existed on the part of plaintiff in error against the deceased. Whether the threats were the result of momentary anger,—a slight difference on some trifling matter, such as would be likely

to leave behind no trace of ill-will,—or was the expression of a deliberate intention, was for the jury to determine, under all the circumstances.

The remarks made by the State's attorney, as found in the abstract, are not sufficient to warrant a reversal of the judgment.

The plaintiff in error claims it was error to allow the revolver to be taken by the jury. The revolver, and the bullet taken from the brain of the deceased, were both introduced in evidence. The defendants made nothing but a general objection, which was overruled, and the revolver and bullet were admitted in evidence. It was proper for the court to allow the revolver and bullet introduced in evidence to go to the jury. In the case of *Yates* v. *People,* 38 Ill. 528, cited by plaintiff in error, the pistol had *not been* introduced in evidence, and was sent to the jury to experiment with, without the knowledge of the court, the counsel or the prisoner,—an entirely different state of facts from the case under consideration.

After a careful consideration of the entire record, and believing that substantial justice has been done, and finding no substantial errors in the proceedings of the circuit court, the judgment will be affirmed.

*Judgment affirmed.*