FRANK FLANAGAN *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1905.*

1. CRIMINAL LAW—*whether stolen property is identified is for the jury.* Whether the property found in defendants' possession was the property alleged to have been stolen is a question of fact for the jury, where the testimony relating to the identification thereof is conflicting.

2. SAME—*reasonable doubt of guilt is not limited to consideration of evidence tending to establish alibi.* The reasonable doubt which will authorize the acquittal of a defendant whose defense is an *alibi* is the doubt of guilt arising from a consideration of the whole evidence, and not merely of that relating to the *alibi.*

3. SAME—*possession of stolen property immediately after theft implies guilt.* Where larceny is committed at the time of burglary, possession of the stolen articles immediately after the crime, if unexplained, is presumptive evidence of participation in the burglary as well as the larceny.

4. SAME—*verdict not set aside unless there is reasonable doubt of guilt.* A court of review will not set aside a verdict in a criminal case for insufficiency of the evidence unless it is satisfied, from careful consideration of the whole testimony, that there is a reasonable doubt of the guilt of the accused.

5. SAME—*separation of jury is not of itself ground for reversal.* Separation of the jury in a burglary case during recess or adjournment, while the trial was going on, is not of itself ground for re-

versal, unless it is shown the accused was prejudiced in some way by the separation.

6. SAME—*in burglary, the ownership may be alleged in the occupant.* An indictment for burglary which alleges ownership of the building in the occupant is sufficient although the proof shows that the occupant is merely a tenant of the owner.

WRIT OF ERROR to the Circuit Court of Grundy county; the Hon. S. C. STOUGH, Judge, presiding.

This is an indictment, found by the grand jury at the March term, 1904, of the circuit court of Grundy county against the plaintiffs in error, Frank Flanagan and Thomas Scully, for burglary and larceny. The jury rendered a verdict, finding the defendants guilty in manner and form as charged in the indictment. Motions for new trial and in arrest of judgment were made and overruled; and judgment was entered upon the verdict, adjudging the two defendants guilty of the crime of burglary, and sentencing them to the penitentiary until discharged by the prison board as authorized and directed by law, provided such term of imprisonment shall not exceed the maximum term, nor be less than the minimum term provided by law for the crime, for which they were convicted and sentenced, making allowance for good time as now provided by law. The present writ of error is sued out for the purpose of reviewing such judgment of conviction.

The indictment consists of three counts. The first charges that Frank Flanagan and Thomas Scully on the 19th day of November, 1903, in Grundy county, the building of one Laura J. Neilson there situate, willfully, maliciously, forcibly and burglariously did break and enter with intent the goods and chattels of one August Hamfeldt in said building, then and there being, feloniously to steal, take and carry away contrary to the form of the statute in such cases made and provided, etc. The second count is the same as the first, except that it charges that they entered the building of one

"August Hamfeldt" instead of "Laura J. Neilson." The third count charges that on the 19th day of November, 1903, at and within the county aforesaid, two quarts of whisky of the value of two dollars of the goods and chattels of one August Hamfeldt, then and there in the possession of the said August Hamfeldt being found, feloniously did steal, take and carry away, etc. Each of plaintiffs in error entered the plea of not guilty to the indictment and each and every count thereof. On March 21 and 22, 1904, plaintiffs in error were tried jointly on the charges in said indictment, and convicted as above stated.

J. W. RAUSCH, for plaintiffs in error.

H. J. HAMLIN, Attorney General, and CHAS. F. HANSON, State's Attorney, (GEORGE B. GILLESPIE, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The errors relied upon for the reversal of this judgment of conviction are, 1, that the court admitted on the trial improper evidence in behalf of the People and excluded proper evidence in behalf of plaintiffs in error; 2, that the State's attorney was permitted to ask plaintiffs in error over their objections improper and prejudicial questions; 3, that the court erred in refusing to give instructions numbered 40 to 45, both inclusive, at the close of the People's case, which directed the jury to find the defendants and each of them not guilty, and again erred in refusing to give said instructions at the close of all the evidence; 4, that the court gave improper instructions for the People and refused to give proper instructions asked by plaintiffs in error and each of them; 5, that the verdict of the jury is the result of prejudice, passion and a total misconception of the evidence; 6, that the verdict of the jury and the judgment of the court are con-

trary to the law and against the weight of the evidence; 7, that the whole evidence in the record is insufficient to support the verdict and judgment of conviction of the defendants; 8, that there is a variance between the indictment and the evidence; 9, that the court erred in permitting the jury to separate during the progress of the trial; 10, that the court erred in instructing the jury in reference to the form of the verdict.

The argument in behalf of plaintiffs in error is a brief, setting forth certain abstract propositions of law without stating how the same are applicable to the facts of the case. The argument submitted does not show what improper evidence was admitted or what proper evidence was excluded, nor does it point out what improper and prejudicial questions were asked, nor which of the instructions given for the People were improper, nor what instructions asked by the plaintiffs in error, and refused, were proper. So far as we are able to gather from the argument submitted by counsel for plaintiffs in error, the points mainly relied upon are that the evidence does not sustain the verdict; that the court erred in permitting the jury to separate during the progress of the trial; and that there was a variance between the allegations of the indictment and the proof as to the ownership of the building, in which the burglary was alleged to have been committed. The point, that the evidence does not sustain the verdict, is involved in the contention that the court erred in refusing to instruct the jury to find each plaintiff in error not guilty on each count of the indictment. The material facts are substantially as follows:

*First*—On November 19, 1903, August Hamfeldt kept a saloon in the city of Morris on the north side of Washington street in the middle of the block, about two blocks west of the court house. The building, where the saloon was, faces north, and was sixty or sixty-five feet long and eighteen or twenty feet wide, and, on the evening of November 19, 1903, was lighted by two electric lights suspended from the

ceiling by means of drop cords, the lights on which were turned off and on by means of a button attached to each light. On Thursday, November 19, 1903, in the evening between 8:30 and 9:00 o'clock, plaintiffs in error, Flanagan and Scully, entered the saloon of Hamfeldt. Flanagan asked Hamfeldt for something to drink, saying that he was "hard up, had no money, and felt sick and needed a drink badly." They came into the saloon about fifteen or twenty minutes before Hamfeldt closed his saloon on that evening, and remained there until he closed it, which was about nine o'clock, or a little before nine o'clock. They went out when the saloon was closed. While they were in the bar-room, Hamfeldt filled two quart-bottles with whisky, which he used for the purpose of filling glasses when he waited on customers. The building, in which the saloon was located, was owned by one Laura J. Neilson, and was rented by Hamfeldt and occupied and possessed by him as a saloon. When Hamfeldt closed his place of business he took a walk through the streets of Morris, which occupied about an hour's time, and then returned to his saloon somewhere about 9:45 on that evening. The building, in which the bar-room was located, was a three-story building. Hamfeldt occupied a room immediately over the saloon, to which a stair-way led from the inside of the saloon. When he returned from his walk on the evening in question, he went up-stairs and went to bed in his room which was on the second floor. He slept until 7:00 or 7:30 o'clock the next morning when he came down into the saloon, and opened his place of business. He then found that the rear window had been broken, and that his saloon had been entered, and that the two quart-bottles of whisky, which he had filled on the night before just before closing, had been taken away. An alley ran east and west in the rear of the lot, on which the three-story building stood. There was a vacant space of ground between the alley and the rear of the building. In the rear wall of the building was a door, having glass in it, a little east of the center of the building;

and a little east of the door was a window, in which were two window sashes, each about two feet square. In the morning when Hamfeldt examined the window, he found the brick inside on the floor with which the window had evidently been broken; and a screen door, which the night before had leaned against the window, had been pushed over and had fallen upon the floor. Between nine and ten o'clock on the evening of November 19, 1903, and evidently while Hamfeldt was out of his saloon taking his walk, one Burmeister, city engineer, whose place of business was a short distance from the back door of Hamfeldt's saloon, heard glass falling, which sounded as though some one had thrown a rock through a window, and, when he heard the sound, he ran into his house, thinking that one of his children had broken one of the glasses in his own house. On the morning of Friday, November 20, 1903, at about six o'clock, one Zimmerman entered a stable where he kept his horses, located on the corner of the alley a short distance west of Hamfeldt's saloon, and back of the building in which the saloon was located. He there found Kirk Carpenter, a colored man, who was employed to take care of his horses, and who was attending to his work. He heard something drop down from the loft or room over the stable, and, when he hallooed and asked who was there, a man, named Louis Ward, described as an habitual drunkard, answered him. He went up to see what was the matter, and there he found plaintiffs in error, Flanagan and Scully, lying on the hay asleep, and drunk. "Right alongside of them" lay two bottles in one of which was whisky. At this time Zimmerman had heard nothing of any burglary. Scully got up and went out, but Zimmerman states that he was unable to induce Flanagan to get up, and the latter remained in the barn on the hay until about one o'clock. The next day, or the day after, Burmeister came to the hay-loft of Zimmerman's stable, and took away the bottles and carried them to Hamfeldt in his saloon. These bottles were identified by Hamfeldt as the same bottles of

whisky, which he had left upon a table in his saloon when he closed it on the evening of November 19, at nine o'clock. The testimony shows that Scully and Flanagan were hard drinkers, and were at that time on a spree. On November 16, 1903, Flanagan was arrested for drunkenness and disorderly conduct, and taken before a police magistrate and fined $3.00, and, in default of the payment of the fine, was sentenced to imprisonment in the jail for three days. On the 19th of November, 1903, immediately upon being released from jail, Flanagan met Scully and spent the day in visiting saloons in Morris, and drinking therein. The plaintiffs in error took supper at a hotel, called the Clifton House, at six o'clock, and, after wandering around the streets and visiting saloons, they entered the saloon of Hamfeldt at the time mentioned.

There is conflict in the evidence as to some of the circumstances testified to by the witnesses, but we see nothing to indicate that the result, reached by the jury, was the result of prejudice or passion.

Counsel for plaintiffs in error sought to weaken the testimony of Hamfeldt, identifying the two bottles of whisky which were taken from his saloon, by showing that there were a number of saloons in Morris, where bottles, similar to those in question, and having the same words impressed in the glass thereof, were used by the persons keeping such saloons. The testimony of Hamfeldt was quite positive that one of the bottles found by the side of the plaintiffs in error was his, because it had a label on it, a portion of which had been rubbed off, and Hamfeldt is positive, owing to the appearance of this label, that the bottle so found was his bottle, which he had used for a long time. There was testimony, tending to show that the bottles, found by the side of the plaintiffs in error under the circumstances already stated, were the same bottles, which were taken from the saloon of Hamfeldt, and there were also circumstances proven by the plaintiffs in error, tending to show that the identification of

the bottles was not clearly established. This was a matter for the jury to determine.

The plaintiffs in error both swore that they did not enter the saloon of Hamfeldt on the night in question, and did not take the bottles of whisky in question therefrom. They stated that, when they left the saloon of Hamfeldt, two Greeks, who were employed ás laborers in a tannery near by, entered the saloon. In this statement they are contradicted by Hamfeldt. Plaintiffs in error also say that, when they left the saloon of Hamfeldt, they met on the street a man by the name of Cronin, and that Scully borrowed $5.00 from Cronin, and that on that evening they visited a cigar store, a labor lodge, and a number of saloons where they drank whisky. Cronin was not produced upon the trial to show that he loaned them any money. They also swore that they went to the saloon of a man, named Black, and there spent a dollar in the purchase of whisky. The other $4.00 of the $5.00 were not found upon their persons, and were not produced. Black himself was not produced upon the trial to show that they purchased any whisky of him on that evening. On the contrary, Black is shown to have left town to go hunting, as it is said, upon the day on which the trial took place. Plaintiffs in error say that, after they left the saloon of Hamfeldt, and after they had visited the other places at which they drank liquor, they returned to their hotel about eleven o'clock at night and found it locked and were unable to get in, and for that reason went to the stable. There was testimony, tending to show that the clerk of the hotel was asleep in the office, and that there were back and side entrances where boarders of the hotel could easily enter after it was closed at night. The evidence also shows that, immediately after the arrest of the plaintiffs in error, they were taken before the sheriff and district attorney, and the latter told them that, if they could explain how the bottles of whisky, which were found in their possession in the hay-loft, were obtained, or if they could account in any reasonable way for

214—12

their presence there, they would be released from arrest. The testimony shows that the plaintiffs in error did not offer any explanation of this circumstance, and did not then say any-thing about having purchased the liquor from Black.

We forbear to further discuss or analyze the testimony. It is sufficient to say that there was testimony, which justified the jury in finding a verdict of guilty.

*Second*—Some of the testimony introduced by the plaintiffs in error upon the trial below was introduced for the purpose of establishing an *alibi*. Counsel for plaintiffs in error insists that, if the evidence, so introduced to prove an *alibi*, when considered by itself, raised a reasonable doubt in the minds of the jury as to the guilt of the accused, they should have been acquitted. The law is not as thus stated. The reasonable doubt, which will acquit a prisoner when his defense is an *alibi*, is the doubt of guilt, which arises from the consideration by the jury of all the evidence, as well that touching the question of the *alibi*, as the criminating evidence introduced by the prosecution. (*Carlton* v. *People*, 150 Ill. 181). In *Ackerson* v. *People*, 124 Ill. 563, we said (p. 568) : "The burden of making good the defense of *alibi* is upon the accused, and to make it availing he must establish such facts and circumstances clearly sustaining that defense, as will be sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against him." (See also *Mullins* v. *People*, 110 Ill. 42).

*Third*—From the review of the facts, made as above, the jury were warranted in coming to the conclusion that the stolen property was in the possession of the plaintiffs in error on the morning after the burglary was committed. The rule is, that possession of stolen property immediately after the theft is evidence, which will warrant a conviction unless overcome by circumstances, or other evidence. "All the books agree that a recent possession after the theft is sufficient to warrant a conviction, unless the attending circum-

stances or other evidence so far overcomes the presumption thus raised, as to create a reasonable doubt of the prisoner's guilt, when an acquittal should follow." (*Watts* v. *People*, 204 Ill. 233). The presumption of the guilt of the plaintiffs in error, arising from the fact that the stolen whisky was found in their possession, was not overcome by any circumstances sufficient to create a reasonable doubt of their guilt. It is said by the plaintiffs in error that the possession must be exclusive. (*Watts* v. *People, supra*). We have been pointed to no evidence in this case, tending to show that the possession was not the exclusive possession of the plaintiffs in error. The hostler, Carpenter, and the drunkard, Ward, are not shown to have shared the possession of the stolen property with the plaintiffs in error. Neither Carpenter, nor Ward, was produced upon the trial of the case. The rule in regard to the possession of stolen property immediately after the theft, as creating a presumption of guilt, applies in cases of burglary as well as in cases of larceny. "Where a larceny of goods is committed at the time of a burglary, the possession of a party, immediately after the crime, of some of the stolen goods, is evidence of guilt and participation in the burglary, as well as in respect to the larceny." (*Langford* v. *People,* 134 Ill. 444).

*Fourth*—It is true that several persons testified upon the trial below as to the good character and sober habits of the plaintiffs in error. This testimony was contradicted by a large amount of evidence, which showed that the plaintiffs in error were addicted to excessive drinking; and it was for the jury to consider this testimony, in connection with all the other facts and circumstances, in determining whether or not the plaintiffs in error were guilty of the offense charged. The instructions, considered as a whole, and viewed as a series, fairly presented the law of the case to the jury, and a judgment will not be reversed on account of slight errors contained in instructions given. Nor will a court of review set aside a verdict in a criminal case upon the ground of the

insufficiency of the evidence, unless it is "satisfied from a careful consideration of the whole testimony that there is a reasonable doubt of the guilt of the accused." (*McCoy* v. *People,* 175 Ill. 224; *Gilman* v. *People,* 178 id. 19). We are unable to say in the case at bar, that the evidence does not sustain the verdict of the jury.

*Fifth*—The record shows that the jury were permitted by the court to separate during the recess, or adjournment, of the court while the trial was going on. In cases of this kind, the separation of a jury without consent is not of itself error and ground for a new trial. It must be shown that the accused was prejudiced by the separation, and that the jury were subjected to some influence, which might have operated to the prejudice of the case. (*Marzen* v. *People,* 190 Ill. 81; *Gott* v. *People,* 187 id. 249; *Adams* v. *People,* 47 id. 376). There is nothing in the present record to show that any of the jurors were, or might have been, tampered with or improperly influenced, or that the plaintiffs in error were in any way injured or prejudiced by the fact, that the jury were permitted to separate during the adjournment.

*Sixth*—It is said that there is a variance between the indictment and the evidence, because the first count of the indictment charges that the building, where the burglary is alleged to have been committed, was the property of Laura J. Neilson, while the evidence showed that the building was owned by Laura J. Nelson. Counsel for defendant in error insist that Neilson was merely the Swedish name for the English name, Nelson. Whether this be so or not is of no importance, because the second count in the indictment charges that the plaintiffs in error entered "the building of one August Hamfeldt." The proof shows that Hamfeldt rented the building from the owner thereof, and occupied it for a saloon, as the tenant of such owner. In *Smith* v. *People,* 115 Ill. 17, which was an indictment for burglary, the point was made that there was a variance between the proof and the indictment, in that the indictment charged the bur-

glarious entry was into the dwelling house of Francis Dem-
ling, while the proof showed that Demling did not own the
house where he lived, but that he rented the first floor of the
house, where was his room from which the property was
taken, from one Groosheimer, the owner, who lived in the
apartments above; and in that case we said (p. 20) : "In
burglary, the ownership may be laid in the occupant, whose
possession is rightful, as against the burglar. (2 Bishop on
Crim. Proc. sec. 138). The rooms rented to Demling con-
stituted the dwelling house of Demling in the sense of the
law. (*Mason* v. *People,* 26 N. Y. 200). There is nothing in
this point."

Counsel has not pointed out to us wherein the court erred
in instructing the jury in reference to the form of the verdict,
and, after examining the instructions upon that point, we are ·
unable to discover anything erroneous in them.

We see no reason for reversing the judgment of convic-
tion entered in this case. Accordingly, the judgment of the
circuit court of Grundy county is affirmed.

*Judgment affirmed.*