# THE PEOPLE OF THE TERRITORY OF UTAH, RESPONDENT, *v.* JOHN FLYNN, APPELLANT.

CRIMINAL LAW.—LARCENY.—FELONIOUS INTENT.—Where the court charged the jury that "if the defendant was an inmate of the penitentiary at the time of the larceny, serving out a sentence of a competent court, and he took the horse in question for the purpose of escaping, that would be larceny;" and also charged that "there ought to be a union of act and intent in every criminal offense, and they must find beyond a reasonable doubt that the defendant feloniously took and rode away the horse in question, with intent to deprive the owner thereof of ownership and use of the horse, and the taking must have been with the intent to convert the horse to his own use, and take him away from the possession of the owner, and without any intention of returning the same;" *held*, that the instruction was not erroneous.

ID.—TRIAL WHILE IN PENITENTIARY.—DISABILITY.—A convict may be tried and sentenced for a criminal offense committed in trying to escape from the penitentiary, even though the trial and sentence were had before his term of imprisonment had expired.

ID.—IMPEACHING VERDICT.—AFFIDAVITS OF JURORS.—In a criminal case, affidavits of jurors will not be received to impeach or question their verdict, nor to show the grounds upon which it was rendered, nor to show their misunderstanding of facts or of law, nor that they misunderstood the charge of the court, or the effect of their verdict, nor their opinions, surmises, and processes of reasoning in arriving at their verdict.

APPEAL from orders denying a motion in arrest of judgment, denying a motion for a new trial, and from a judgment of the district court of the third district. The opinion states the facts.

*Messrs. Baldwin and Tatlock*, and *Mr. H. V. A. Ferguson*, for the appellant.

*Mr. Charles S. Varian*, U. S. Attorney, for the respondent.

MINER, J.:

The defendant in this case was indicted in the third district court, October 4, 1890, charged with the crime of grand larceny in stealing a horse of the value of $50. Several errors are assigned as having occurred at the trial, but, as there is no testimony embraced in the abstract or record, we cannot review them here.

The abstract in this case is so imperfect that it is difficult for the court to consider any of the questions presented, especially as there were no sufficient exceptions taken to the charge of the court as would ordinarily justify the court in making any examination into the record, but, inasmuch as this objection was not urged upon the hearing, we content ourselves with what appears from the charge of the court, and from the motion in arrest of judgment, as showing that, at the time the defendant was indicted on this charge, he was serving out a term of imprisonment previously imposed upon him by the court upon a former conviction, whereon he had been sentenced for two years' imprisonment in the penitentiary, and from which imprisonment he had escaped, and in making his escape took off the horse he is charged with stealing. He was taken with the horse while endeavoring to make his escape, after which he was tried and convicted for the larceny in question, before the expiration of his first term of imprisonment. In reviewing the proceedings, we find no error in the refusal of the court to charge the jury as requested by the defendant's counsel. On motion for a new trial, and also in arrest of judgment, counsel for defendant urged that the court erred in instructing the jury that, "if the defendant was an inmate of the penitentiary at the

time of the larceny, serving out a sentence of a competent court, and that he took the horse in question for the purpose of escaping, that would be larceny." This charge, taken by itself, and disconnected from that which followed, might be subject to the objection made; but we find the court charged the jury correctly in defining larceny; and also charged the jury that, before they could convict, "they must find, beyond reasonable doubt, that the defendant feloniously took and rode away the horse in question, with intent to deprive the owner thereof of the ownership and use of the horse; and that there ought to be a union of act and intent in every criminal offense. * * * That the taking must have been with intent to convert the horse to his own use, and take him away from the possesssion of the owner, and without any intent of returning the same," etc. Taking the charge as given, as a whole, we find no error in the instructions given.

The next question presented by counsel for the defendant is that the defendant had been attainted of felony, and was serving a two-years sentence in the penitentiary, previously imposed by the court, and that such period had not yet expired when this indictment was found and trial had; and that the court had no jurisdiction over the subject-matter, or the person of the defendant. Section 4749, Comp. Laws 1888, provides that "A sentence of imprisonment in the penitentiary for any term less than life suspends all civil rights of the person so sentenced, and forfeits all public offices, and all private trusts, authority, or power during such imprisonment." In California, under a similar statute, it is held (*In re Nerac,* 35 Cal. 392) that a creditor whose debtor is imprisoned in the penitentiary for a term less than life may sue and subject the property of such debtor to the satisfaction of his debt during the term of his imprison-

ment, and that the person so sentenced is not dead in law; that his civil rights in some matters are merely suspended, but that the rights of his creditors to sue and recover judgment against him are not suspended (*Phelps* v. *Phelps*, 7 Paige, 150); and that the forfeitures and disabilities imposed by the common law upon persons attainted of felony are not known in this country; that no consequences follow a conviction of felony, except those declared by statute.

It was early held in England that persons convicted of felony, and thereby attainted, might plead the same in bar to a subsequent prosecution for any other felony, whether committed before or after the first conviction, for the reason that by his first attaint his possessions were forfeited, his blood corrupted, and he became dead in law; therefore any further conviction or attaint would be fruitless. 4 Bl. Comm. 336; 2 Hale, P. C. 250; 1 Chit. Crim. Law, 464. This same doctrine was carried out in the case of *Crenshaw* v. *State*, 1 Mart. & Y. 122, wherein it is held that a conviction, judgment, and execution upon one indictment for a felony not capital is a bar to all other indictments for felonies not capital, committed previous to such conviction. This doctrine, however, has seldom been followed in the United States, and the above case, though not expressly overruled, seems to be the only adjudication in this country, recognizing this doctrine. Bishop, in his Criminal Law (volume 1, § 898), says: "It was a doctrine of the English law, at the time when this country was settled, that, as a general rule, to which there were few exceptions, a person attainted for one felony could not be prosecuted criminally for another. But this doctrine, though recognized in one or two American cases, is not usually followed in this country. In England it was long ago abolished by an act of parliament." In *Hawkins* v. *State*, 1 Port. (Ala.)

475, the court holds that neither a conviction nor pardon for any particular offense can, in that state, operate as a bar or discharge of any other distinct offense; and it is now generally conceded throughout the United States that the doctrine that a conviction for another distinct felony, committed either before or after the first conviction, or while the criminal is serving out his sentence thereon, does not prevail in this country, and is as repugnant to the established principle of modern criminal law as it is unsuported by reason. *Rex* v. *Vandercomb*, 1 Lead. Crim. Cas. 528; Archb. Crim. Pr. (Pom. Notes) 350; *State* v. *Commissioners*, 2 Murph. 371; *State* v. *McCarty*, 1 Bay, 334; 1 Bish. Crim. Law, §§ 731–884, 898, 953.

Again, refering to Bishop's Criminal Law, the writer lays down the rule to be that, "when a prisoner, under an unexpired sentence of imprisonment, is convicted of a second offense, or when there are two or more convictions on which sentence remains to be pronounced, the judgment may direct that each succeeding period of imprisonment shall commence on the termination of the period next preceding." 1 Bish. Crim. Law, §§ 731, 884; Comp. Laws Utah, 1888, §§ 4746, 4749, 4750. *In re Nerac*, 35 Cal. 393; *People* v. *Forbes*, 22 Cal. 136; *McQuoid* v. *People*, 3 Gilman, 76; *Bryan* v. *Atwater*, 5 Day 181, 5 Amer. Dec. 136, 142; *Com.* v. *Goodenough*, Thacher, Crim. Cas. 132; *Kite* v. *Com.*, 11 Metc. (Mass.) 581; *Reg.* v. *Bird*, 2 Eng. Law & Eq. 439; *Mahon* v. *Justice*, 127 U. S. 700, 8 Sup. Ct. Rep. 1204; *Ker* v. *People*, 119 U. S. 437, 7 Sup. Ct. Rep. 225. In the case of *People* v. *Majors*, reported in 65 Cal. 138, 3 Pac. Rep. 597, it is held that a person may be tried and convicted for the crime of murder, notwithstanding he is at the time of the trial and sentence serving out a previous sentence of life imprisonment for another murder, com-

mitted at the same time, and imposed by another court. So in the case of *People* v. *Hong Ah Duck,* 61 Cal. 387, it was held that, on a trial for murder, it was competent for the prosecution to show that at the time of the homicide the defendant was a convict in the penitentiary, serving out a life sentence, and that the homicide was committed while so imprisoned; the object being to give the jury to understand that if they found the defendant guilty of murder in the first degree, with a recommendation to imprisonment for life, and by said verdict fixed the imprisonment for life, the punishment would be no more than the defendant was then undergoing under a former conviction, and that such a verdict would be no punishment whatever, unless the jury made it punishable with death,

In this Territory there is no statute exempting a convict from punishment for an offense committed by him while serving out his term of imprisonment. Our general penal laws include all persons within their scope. The criminal is protected by the law, and is made amenable to it, while in prison, for any term of imprisonment. The statute of limitations requires prosecution for all felonies, other than for murder, to be commenced within four years after the commission of the offense (Comp. Laws 1888, § 4830), and if not so commenced the prosecution is barred. It is true an indictment may be found before the expiration of the statutory limit, and the prisoner may be arrested and tried thereon after the expiration of his term of imprisonment; but it is not difficult to discover that this practice, if inaugurated, would not only greatly delay the execution of public justice, but in many instances would prevent a speedy trial that is guaranteed to all accused persons. It would impair the necessary discipline required in public prisons,

and, in a measure, become a shield and protection to the criminals therein confined.

On motion for a new trial, counsel for the appellant presented the affidavits of two jurors, who testified, in substance, that they understood the court to have charged the jury that, " If defendant was an inmate of the penitentiary, serving .out a sentence, and that he took the horse in question and rode it away for the purpose of escaping, he would be guilty, no matter what the intentions were in taking the horse," and also stated their conclusions drawn from the charge, etc. It does not appear from the abstract whether the court received and acted upon the affidavits or not, but we are clearly satisfied that the affidavits should not have been received by the court nor considered upon this motion. In is well settled that affidavits of jurors will not be received to impeach or question their verdict, nor to show the grounds upon which it was rendered, nor to show their misunderstanding of fact or law, nor that they misunderstood the charge of the court, or the effect of their verdict, nor their opinions, surmises, and processes of reasoning in arriving at a verdict. 2 Thomp. Trials, § 2618; 1 Bish. Crim. Proc. §§ 874, 1270; *Woodward* v. *Leavitt,* 107 Mass. 471; *Bridge* v. *Eggleston,* 14 Mass. 245; *People* v. *Columbia C. P.,* 1 Wend. 297; *People* v. *Doyell,* 48 Cal. 85; *Wilson* v. *Berryman,* 5 Cal. 46; *Dana* v. *Tucker,* 4 Johns. 487; *Polhemus* v. *Heiman,* 50 Cal. 438; *Clark* v. *Creditors,* 57 Cal. 637. We discover no error in the record as presented. The motions for new trial and arrest of judgment were properly denied, and the judgment and conviction are affirmed.

Blackburn, J., concurred.