# CHARLESTON.

## Ex Parte James Dudley *v.* State.

### Submitted March 9, 1904.   Decided March 29, 1904.

1.  INDICTMENT—*Order of Dismissal.*
    An order retiring an indictment for felony from the trial docket of a court is equivalent to the dismissal thereof, and the same may not thereafterwards on motion of the State be restored to the docket for trial.   (p. 475.)

2.  INDICTMENT—*Discharge of the Accused.*
    If an indictment has been improperly placed on the trial docket and the accused has been arrested on a capias to answer the same, he may be discharged therefrom on a writ of *habeas corpus.*   (p. 475.)

Error to Circuit Court, Cabell County.

Application of James Dudley for writ of *habeas corpus.* From an order refusing the writ, he brings error.

*Reversed.*

A. L. HOOTEN, for plaintiff in error.

The ATTORNEY GENERAL, for the State.

DENT, JUDGE:

James Dudley complains of a judgment of the circuit court of Mingo county, refusing to discharge him from custody on a writ of *habeas corpus* as being illegally held to answer an indictment against him found at the September term, 1899, and which was retired from the docket on the 8th day of January, 1901, and re-instated thereon by the order of the court on the 8th day of June, 1903, and a capias to answer the same under which he is now held in custody.

The statement of facts is as follows:

"On the 21st day of May, 1895, James Dudley was convicted of a felony in the circuit court of Mingo county, West Virginia, and sentenced to confinement in the penitentiary for a term of eighteen years; on the 8th day of April, 1899, he was granted by G. W. Atkinson, the Governor of the State, a conditional pardon, and was liberated from the penitentiary in accordance with the terms thereof.   On the 1st day of June,

1899, Dudley was arrested charged with having attempted to murder one A. B. Parlour, and was, on the 18th day of July, 1899, by order of the Governor returned to the penitentiary to serve out the balance of the sentence imposed on him, by reason of the breach of the condition of his pardon. At the September term, 1899, of the circuit court of Mingo county, the grand jury returned an indictment against Dudley charging him with having committed an assault on the 1st day of June, 1899, on A. B. Parlour with intent then and there to maim, disfigure, disable and kill, and on the 18th day of May, 1900, Dudley was, by order of the circuit court of Mingo county, taken from the penitentiary to Mingo county for trial on the above indictment, and was on the 18th day of September, 1900, by order of the circuit court, returned to the penitentiary to be therein confined under the former sentence of the court, the order reciting that the state was not ready to try the case by reason of the absence of a material witness. On the 8th day of January, 1901, on a motion of the state by its attorney, and for reasons appearing to the court, the circuit court of Mingo county entered an order retiring from the docket the indictment found against Dudley at the September term, 1899, for his attempt to kill. Parlour. On the first day of May, 1903, Dudley presented to the circuit court of Marshall county, West Virginia, his petition for a writ of *habeas corpus,* praying for reasons therein assigned, and as set forth in this statement, that he be discharged from further confinement in the penitentiary. On the 11th day of June, 1903, the last named circuit court entered an order discharging Dudley from further confinement in the penitentiary by reason of the sentence imposed on him by the circuit court of Mingo county on the 21st day of May, 1895. On the 12th day of June, 1903, immediately upon being released from the penitentiary, Dudley was arrested by virtue of a capias issued by the clerk of the circuit court of Mingo county, and taken to Mingo county, and lodged in the county jail thereof. On the 22nd day of August, 1903, Dudley presented to the Judge of the Eighth Judicial Circuit of the State of West Virginia his petition for a writ of *habeas corpus,* praying for reasons therein assigned that he be released from the custody of the sheriff of Mingo county, and for such other, further and general relief as his case required and to

the court might seem meet and proper, and on the 12th day of Scptember, 1903, on final hearing the prayer of Dudley was refused and his petition was dismissed, from which order this writ was allowed.    The contention of the plaintiff in error is, that the order entered on the 8th day of January, 1901, by the circuit court of Mingo county, retiring the case against this plaintiff from the docket, had all the force and effect of a *nolle pros.,* and worked a discontinuance of the same, and that the case having been retired from the docket, the capias upon which plaintiff was arrested on the 12th day of June, 1903, was illegally issued, there being no indictment pending against plaintiff at the time."

So far as the order of the Governor in restoring the petitioner to the penitentiary is concerned, the illegality thereof was determined by the judgment of the circuit court of Marshall county, discharging the petitioner from custody thereunder, and that matter has become *res adjudicata* and cannot now be reviewed by this Court.    The only question for consideration here is whether the petitioner can be held to answer the indictment now pending against him in the circuit court of Mingo county.    After the petitioner was restored to the penitentiary, it clearly appears that there was nothing in the way of his being tried on the indictment then pending against him, and the circuit court did send for him, but on motion of the state the trial was postponed, and he was recommitted to the penitentiary.    The indictment was then on the same motion retired from the docket, and was not restored until after the prisoner was discharged in 1903.    Section 25, chapter 160, Code, provides that "Every person charged with felony and remanded to a circuit court for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity, or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident, or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict."

The only excuse given for not trying the petitioner as re-

quired in this section is that because he had been illegally recommitted to the penitentiary by order of the Governor. It is not claimed that he could not have been tried as he was in the custody of the law and under order of the court, but that the· court and prosecuting attorney were laboring under the belief that he was legally confined in the penitentiary for his former· offense, and that would render it unnecessary to try him under the second indictment. The petitioner was not afforded the· opportunity to insist on a speedy trial, but was illegally held' in custody, and if the indictment had remained a live indict-· ment on the docket, while the State was illegally holding him, he might well insist that he should be discharged under the· foregoing section, as his illegal detention does not come within any of its provisions, and he might well claim as he was· subject to the order of the court that he was being held to· answer the pending indictment against him, as this was the only legal cause for his detention. State v. Killison, decided at this term. It is the State's fault and not the petitioner's· that he was not brought to trial wihin the time prescribed.

The State avoided doing so by having an order made retiring· the indictment from the docket, and keeping the same so retired for more than six terms of court, at any of which had it been proper the petitioner might have been tried. Such retirement from the docket without the consent or fault of the prisoner must be held equivalent to a dismissal thereof for failure to· prosecute. It is true the case was not retired from the docket for failure to prosecute, but was retired from the docket to avoid the necessity of prosecution, which so far as petitioner· is concerned, and who was not consulted with regard thereto, amounts to the same thing as a dismissal for failure to prosecute. Had he been brought into court, he would have had the right to have demanded a speedy trial or a dismissal of the indictment, and the court may not do that in the· absence of the prisoner which it could not do were he present *In re Bigelow,* 95 Am. St. R. 187; *People* v. *Matson,* 129, Ill. 591; *People* v. *Morino,* 85 Cal. 575; *In re McMicken,* 35 Kan. 406.

The indictment being dismissed, it could not after a long lapse of time be reinstated on motion of the State. *State* v. *Rodovitch,* 66 Minn. 294.

Prosecuting attorneys may not retire felony cases from the docket, and restore them at their pleasure. Their duty requires them to prosecute or dismiss, and they cannot at their pleasure adopt an intermediate practice to avoid the necessity of a trial, and yet prevent the dismissal of the indictment. If they fail to prosecute when they can the law discharges the accused and an order retiring an indictment from the docket dismisses it.

The judgment of the circuit court is reversed, and the accused is discharged from further prosecution on the indictment mentioned.

*Reversed.*