[No. 2010]

IN THE MATTER OF THE APPLICATION OF J. FRANK TRAMNER FOR A WRIT OF HABEAS CORPUS.

1. CRIMINAL LAW—TRIAL—PENDING SENTENCE OF LIFE IMPRISON-MENT.

Under Rev. Laws, 6908, 6921, 7459, providing that every person shall be liable to punishment for a public offense committed by him, that there is no limitation of the time within which a prosecution for murder must be commenced, and that, when it is necessary to have one imprisoned brought before a court, an order for that purpose may be made, one sentenced to life imprisonment for murder may be tried pending his incarcera-tion for a murder previously committed, and in the event of his conviction thereof, and sentence to death, the sentence may be carried into execution, notwithstanding section 7256, pro-viding that, where defendant has been convicted of two or more offenses before judgment on either, the judgment may be that the imprisonment on any one may commence at the expiration of the imprisonment on any other.

2. CRIMINAL LAW—CONTINUANCE—DISCRETION OF TRIAL COURT.

A continuance in a criminal case is within the discretion of the trial court, and in the absence of an abuse of discretion its action will be sustained.

3. CRIMINAL LAW—SPEEDY TRIAL—OBJECTIONS.

Where accused, indicted under two indictments for a double murder, did not object to a continuance of the trial under one indictment, pending his trial under the other, resulting in his conviction and sentence to life imprisonment, and did not apply for a speedy trial, he could not complain that he was not given a speedy trial.

4. CRIMINAL LAW—SPEEDY TRIAL—OBJECTIONS.

Where accused, indicted under two indictments for a double murder, obtained a change of venue in the case of one indict-ment, but the other indictment was not removed, and at the next term of court the latter case was called for trial, and subsequently removed to another county on a change of venue, accused could not complain that he was not given a speedy trial under such indictment, as guaranteed by the constitution and Rev. Laws, 7396.

5. CRIMINAL LAW—SPEEDY TRIAL—OBJECTIONS.

 The statute guaranteeing a speedy trial does not apply while accused is in prison serving a sentence on another charge; but accused, serving such sentence, may demand that he be tried on all indictments against him, and a refusal to try him may enable him to invoke the statute.

ORIGINAL PROCEEDING for a writ of *habeas corpus*. **Writ denied.** Proceedings dismissed.

The facts sufficiently appear in the opinion.

*Parker & Frame,* for Petitioner:

Because petitioner is serving a sentence under a judgment of court he cannot be tried for any other offense pending his imprisonment under the judgment. (*Ex Parte Meyers,* 44 Mo. 280; *State* v. *Buck,* 120 Mo. 479, 25 S. W. 573; *Ex Parte Allen,* 196 Mo. 231, 95 S. W. 415; *State* v. *Bell,* 212 Mo. 130, 111 S. W. 29.)

The proper place of confinement of the petitioner is in the state penitentiary of the State of Nevada; and the superior right to his custody is in the warden of such penitentiary. (*Re Collins,* 8 Cal. App. 367, 97 Pac. 189; *Ex Parte McGuire,* 135 Cal. 339, 87 Am. St. Rep. 105, 67 Pac. 327.)

Petitioner is entitled to his discharge under indictment No. 2 because he was not accorded a speedy trial. (*State* v. *Stalmaker,* 2 Brev. 44; *Ford* v. *Superior Ct.,* 17 Cal. App. 1, 118 Pac. 96; *McLeod* v. *Graham,* 6 Okl. Crim. Rep. 197, 118 Pac. 160; *Re Ford,* 160 Cal. 334, 35 L. R. A. (N. S.) 882, 116 Pac. 757, Ann. Cas. 1912 D. 1267.)

*Cleveland H. Baker,* Attorney-General, for Respondent:

Defendant undergoing a sentence of life imprisonment for the crime of murder can be brought again to the bar of justice to answer for another charge of murder. (*Thomas* v. *People,* 67 N. Y. 226; 1 Bishop, Crim. Law, 5th ed. sec. 953; *Clifford* v. *Dryden,* 31 Wash. 545, 72 Pac. 97; *Willard* v. *Superior Ct.,* 82 Cal. 461, 22 Pac. 1120; *Gaines* v. *State,* 53 S. W. 624; *People* v. *Flynn,* 7 Utah, 378, 26 Pac. 1114; *United States* v. *Farrell,* 5 Cranch, C. C. 311, Fed. Cas. No. 15,074; *Russel* v. *Com.,* 7 Serg. & R. 489;

*Com.* v. *Leath,* 1 Va. Cas. 151; *Howard* v. *United States,* 34 L. R. A. 509, 21 C. C. A. 586, 43 U. S. App. 678, 75 Fed. 986; *Rex* v. *Wilkes,* 4 Burr. 2576; *Rigor* v. *State,* 101 Md. 465, 61 Atl. 631, 4 Ann. Cas. 719; *State* v. *Wilson,* 38 Conn. 126; *People* v. *Hong Ah Duck,* 61 Cal. 387; *People* v. *Majors,* 65 Cal. 138, 52 Am. Rep. 295, 3 Pac. 597, 5 Am. Crim. Rep. 486; *Ex Parte Green,* 86 Cal. 427, 25 Pac. 21; *Ex Parte Morton,* 132 Cal. 346, 64 Pac. 469; *Ex Parte McGuire,* 135 Cal. 339, 87 Am. St. Rep. 105, 67 Pac. 327.)

A continuance in a criminal case is within the discretion of the court; and unless there is an abuse of its discretion, its action will be sustained. (*State* v. *Chapman,* 6 Nev. 320; *State* v. *Rosemurgey,* 9 Nev. 308.)

By the Court, Sweeney, C. J.:

The petitioner, together with one Nimrod Urie, was indicted by the grand jury of Humboldt County, Nevada, for the commission of a double murder, committed at Imlay, in said county, wherein Eugene Quilici and Marie Quilici were robbed and murdered. The defendant, Urie, upon motion was granted a separate trial, and upon such trial, held at Winnemucca, Humboldt County, Nevada, was tried and found guilty of murder in the first degree, and sentenced by the court to be hanged by the neck until he be dead. An appeal from this judgment is pending and undetermined at the present time in this court. The petitioner herein was granted a change of venue from Humboldt County to Washoe County, and upon the trial was convicted of murder in the first degree, and for punishment was ordered confined in the penitentiary for life.

The petitioner was indicted under two indictments for the crime of murder: Indictment No. 1, for the murder of Eugene Quilici; and indictment No. 2, for the murder of Marie Quilici. After conviction upon indictment No. 1, the petitioner was taken to the Nevada state prison and entered upon the serving of his life sentence, and three months later, by an order of the judge of the Sixth judicial district court, he was removed from the state

prison and placed in the custody of the sheriff of Washoe
County, and upon being brought into court for the pur-
pose of having a day set to try him upon indictment No.
2, for the murder of Marie Quilici, petitioner obtained a
writ of *habeas corpus* from this court, setting forth that
he was illegally detained of his liberty, chiefly upon the
two grounds, to wit: First, that under a judgment and life
sentence now in force, under indictment No. 1, the only
lawful place of confinement of petitioner is in the state
prison under said judgment and sentence, and that pro-
ceedings on indictment No. 2 are thereby suspended;
second, that, in the event this court should hold that the
Second judicial district court should have the right to the
custody of the person of petitioner under indictment No. 2,
the petitioner has not been accorded a speedy trial as by
law required, and that under the facts as agreed upon in
the stipulation following he must be discharged:

"It is hereby stipulated and agreed by and between the
attorneys for the State of Nevada and the attorneys for
the petitioner, as follows:

"That on the ____ day of March, 1911, the grand jury,
in and for Humboldt County, Nevada, returned two
indictments against the petitioner, J. Frank Tramner,
and one Nimrod Urie, which said indictments were num-
bered 1 and 2, respectively.

"That indictment No. 1 was for the killing of Eugene
Quilici, and No. 2 was for the killing of Marie Quilici.
Both of said crimes are alleged to have occurred at the
same time and place.

"That at the time of the finding and return of the two
indictments against your petitioner, the grand jury, in
and for Humboldt County, Nevada, returned certain other
indictments as follows: State of Nevada against Watson,
for burglary; State of Nevada against Barnum, for for-
gery; State of Nevada against Wilson, for gambling
State of Nevada against Morrison, for gambling; State
of Nevada against Friend, for embezzlement.

"That after the return of the indictments against the
petitioner, and on the 9th day of March, 1911, the peti-

tioner entered his plea of not guilty to both of said indictments.

"That at the time of the return of the said indictments against your petitioner, and at the time of his entering his plea of not guilty to the same, your petitioner was in the custody of the sheriff of Humboldt County, Nevada.

"That after the return of said indictments numbered 1 and 2, against your petitioner, and at the May term of the district court of the Sixth judicial district, in and for Humboldt County, Nevada, indictment No. 1 against the petitioner was set down for trial, and afterward, and on the____day of May, 1911, was sent to Washoe County, Nevada, by a change of venue.

"That afterward, and on the____day of July, 1911, this petitioner was placed on trial under said indictment No. 1, and was found guilty of murder in the first degree, and his punishment fixed at life imprisonment in the penitentiary of the State of Nevada.

"That thereafter and on the 14th day of July, 1911, judgment and sentence was pronounced on said indictment No. 1 against this petitioner, and a commitment was issued out of the Second judicial district court in and for Washoe County, Nevada, sentencing and committing him to imprisonment for life in the state penitentiary, and directing the sheriff of Washoe County to deliver the petitioner to the warden of the state penitentiary.

"That in pursuance of said judgment and sentence and commitment petitioner was immediately thereafter, and on the 15th day of July, 1911, taken to Carson City, Nevada, and delivered to the warden of the state penitentiary, in whose custody the petitioner remained under said commitment and under the sentence imposed by the Second judicial district court of Washoe County, Nevada, under said indictment No. 1.

"That the petitioner was confined and restrained by the said warden of the penitentiary under said commitment and sentence until about the 29th day of October, 1911, when the petitioner was taken from the custody of the

warden of the penitentiary by the sheriff of Humboldt County, Nevada, and taken to Winnemucca, in said Humboldt County, Nevada.

"That on the 10th day of March, 1911, in the Sixth judicial district court in and for Humboldt County, State of Nevada, the following order was made in the case of the State of Nevada against J. Frank Tramner, under indictment No. 2: 'The defendants, the counsel, and the district attorney being present in court, it is ordered that this cause be continued for further setting.'

"That there was no other or further order made in the case under indictment No. 2, and no further steps taken by the state to bring this petitioner to trial under indictment No. 2, until the 27th day of October, 1911, when an order was made and entered by the judge of the Sixth judicial district court, in and for Humboldt County, Nevada, to bring the petitioner before the said district court of Humboldt County, Nevada, for the purpose of having the case under indictment No. 2 set for trial; said indictment No. 2 being the same indictment No. 2 that was found and returned by the grand jury of Humboldt County, Nevada, on the ____ day of March, 1911, aforesaid, and said order being the order set out by the return of the sheriff of Washoe County, Nevada, herein.

"That afterward, and on the 1st day of November, 1911, a severance was ordered in the case under indictment No. 2, and the case against your petitioner was set for trial on November 25, 1911.

"That afterward, and on November 3, 1911, a change of venue was granted to Washoe County, Nevada, and the petitioner was delivered to the sheriff of Washoe County, Nevada.

"That all of the indictments returned by the grand jury of Humboldt County, Nevada, on the 9th day of March, 1911, were tried and disposed of at the May term of the district court of the Sixth judicial district, excepting indictments Nos. 1 and 2 against the petitioner.

"That at the said May term of the district court of Humboldt County, Nevada, a jury was in attendance and

the witnesses for the state could have been procured for a trial under indictment No. 2, by the use of reasonable diligence.

"That the petitioner was not brought to trial under said indictment No. 2, the same being the indictment that petitioner is now being prosecuted under, for the reason that the district attorney had elected to bring the petitioner to trial under indictment No. 1, because the said indictment No. 1 was in his opinion the strongest case against the petitioner, and that the said district attorney expected a conviction under indictment No. 1, and that the death penalty would be inflicted, and that for that reason it would not be necessary to try indictment No. 2, and prosecute the petitioner thereunder.

"That at the time of the trial and conviction and sentence of the petitioner under indictment No. 1 in the Second judicial district court of Washoe County, Nevada, indictment No. 2 had been found and was standing against the petitioner in the Sixth judicial district court in and for Humboldt County, Nevada.

"That by the trial of the other indictments returned by the grand jury of Humboldt County, Nevada, on the 9th day of March, 1911, this indictment No. 2, that the petitioner is now being prosecuted under, was displaced and set aside on the calendar of the clerk of the Sixth judicial district court, and the rest of said indictments tried in its place and stead, without any affidavits being filed, upon two days' notice, or without any application being made by either party, and without any order of the district court having been made therefor, as required by section 4281 of Cutting's Compiled Laws of the State of Nevada, and that said indictment No. 2 was so displaced and set aside, and the rest of said indictments heard and tried in its place and stead, without any cause having been shown, or without any cause existing, for the so doing whatever, and not upon the application of the petitioner.

"That the judgment and sentence imposed by the Second judicial district court of the State of Nevada on the 14th day of July, 1911, whereby the said petitioner

was sentenced to imprisonment for life in the state penitentiary, is now in full force and effect, and that the same has not been appealed from, vacated, modified, or set aside, and that the petitioner has not been reprieved, pardoned, or paroled, or his sentence commuted, or the same suspended, and that said judgment and sentence is now in full force and effect.

"That a term of the court was held in Humboldt County, Nevada, beginning on the ____ day of May, 1911, at which time a jury was in attendance, and at which time civil and criminal cases were both tried by the jury.

"That on the ____ day of January, 1912, the case of the State of Nevada against J. Frank Tramner, under indictment No. 2, was called for setting, and the petitioner, at said time appearing in court in person and by counsel, objected to the setting of said case under indictment No. 2, or to any further proceedings therein, for the reasons, first, that the petitioner was at the time undergoing sentence in the state penitentiary as hereinbefore set out, and that the said sentence was in full force and effect, and that thereunder the warden of the state penitentiary was entitled to the exclusive custody of this petitioner under said sentence, and that the Second judicial district court in and for Washoe County, Nevada, had no rightful jurisdiction over the person of the defendant, and was not entitled to custody over his person, and that the judgment and sentence hereinbefore set forth operated to suspend, during its existence, any other cause or proceeding against the petitioner, and especially the proceeding on indictment No. 2, and that the State of Nevada had, by its election to proceed to final judgment and sentence on indictment No. 1, waived its right to proceed to trial upon indictment No. 2, and the lawful place of confinement and the lawful custody of petitioner was with the warden of the state penitentiary, by virtue of the conviction and sentence under indictment No. 1.

"And, second, your petitioner has not been given a speedy trial as herein mentioned, and prayed the Second judicial district court to make an order discharging peti-

tioner from the second indictment and remanding him to the custody of the said warden, in execution of the sentence under indictment No. 1, which said objections were overruled, and the case set down for trial.

"That at the time that the indictments were returned against this petitioner it was the custom of the district court, in and for Humboldt County, Nevada, to hold two terms of court each year, one in April and the other in October. That at the time of the making of the order by the judge of the Sixth judicial district, Humboldt County, whereby the indictment No. 2 was continued, for further setting, this petitioner made no objections to the making of said order.

"It is further stipulated that if this court shall hold that the petitioner shall be tried under indictment No. 2, and if the jury in said trial should hold the petitioner guilty and inflict the death sentence, whether that sentence could be executed until the expiration of the sentence now existing under indictment No. 1.

"[Signed] Cleveland H. Baker, Attorney-General.
"Parker & Frame, Attorneys for Petitioner."

[1] Answering the first contention of petitioner, which, when stripped of its technical verbiage, is simply a question of whether or not, when one is undergoing a sentence of life imprisonment for murder, he can be placed on trial for another murder, and if convicted on the second indictment for murder, if a maximum sentence of death should be imposed, whether or not he could be executed. Petitioner's strong contention is that, because petitioner is serving a sentence under a judgment of court, he cannot be tried for any other offense pending his incarceration under the judgment.

Petitioner's main reliance upon this point is based on section 7256, Revised Laws of Nevada, which reads as follows: "If the defendant has been convicted of two or more offenses before judgment on either, the judgment may be that the imprisonment upon any one may commence at the expiration of the imprisonment upon any other of the offenses."

Reviewing this section, we cannot see that the legislature ever intended to preclude a prosecution for another untried offense pending the incarceration of the accused on a prior conviction. It is manifest from a reading of this statute that it provides only for cases in which there are convictions of two or more offenses before judgment on either, and the legislature did not have in mind any such case as is at present under consideration. Under the section above quoted the court was given the discretion, where a conviction was had on two or more offenses before judgment, to make the sentences commence upon the expiration of the term of imprisonment imposed for any other of the offenses; but there is nothing in the section, as we view and construe it, which would constitute a bar to criminal prosecution in other cases which had not gone to judgment while the accused is serving his sentence.

If the construction as contended for by petitioner were so, the results which would follow such a construction of the statute would be very dangerous to society, and it would be deprived of that protection that the law intends to throw around its citizens, and give an unbridled license to criminals to commit crime, protect them for a long period from prosecution, and allow them abundant opportunity to avoid the consequences of their criminal acts. The word "imprisonment" in the statute denies the contention of counsel for petitioner, for the reason that, if a death punishment were inflicted, it would present a different character of punishment than designated in the statute in question, because the statute contemplates, even if there was merit in counsel's contention on this point, a sentence of imprisonment, and not a death penalty.

The Supreme Court of Washington, in the case of *Clifford* v. *Dryden*, 31 Wash. 547, 72 Pac. 97, in commenting upon the baneful results which would follow the construction contended for by counsel for petitioner, properly says: "It might very reasonably happen, considering the difficulty of preserving and perpetuating testimony, that

if the second trial were postponed until after a lengthy sentence had been served it would result in the failure of justice."

The attorney-general, in his able brief, instancing how justice could be retarded, were it not possible to try a convict pending his incarceration for an offense previously committed, illustrating, says: "For instance, A. commits a murder in Nye County, and successfully escapes to Washoe County, and burglarizes a store, is caught there, arrested, pleads guilty, and is sentenced to the penitentiary, and while there his identity is discovered as the man who committed the murder in Nye County. Under these circumstances, if petitioner's contention of the law is correct, he could not be tried for six years, which, of course, considering the difficulty of keeping witnesses intact for the murder in Nye County, etc., would amount to his escaping entirely from prosecution for the offense. Another instance would be when A., convicted of crime, is sentenced to the state prison, and while en route with the sheriff kills a man in attempting to escape. How could the man be punished for murder, if this construction of our criminal procedure is adopted? He could not be brought within the section above referred to (Rev. Laws, 7256), and as he is not at the state prison he could not be brought within the terms of the section which provides for trial and punishment of prisoners for crimes committed while in prison. Therefore, under this view of our criminal procedure, he would be free from prosecution until the expiration of his sentence, at which time it would be impossible to convict him."

Mr. Bishop, in his New Criminal Law (vol. 1, 8th ed., sec. 953), correctly, we believe, states the rule, and fortifies it with abundant authority, when he says: "If one, under an unexpired sentence to imprisonment, is convicted of a second offense, or if there are two or more convictions on which sentence remains to be pronounced, it may direct that each succeeding period of imprisonment shall commence on the termination of that next preceding."

The Court of Appeals, in *Thomas* v. *People*, 67 N. Y. 226, in discussing the question of whether or not a defendant's rights were being violated because he was tried for a crime while he was still under sentence at the state penitentiary, said: "Convicts, like other persons, are under the protection of the law, and are amenable to its penalties. The laws for the punishment of crimes are general, and apply to all persons in the state. Provision is made (Laws of 1847, c. 4) for taking prisoners out of the state prison for trial upon any indictment found against them. In all cases but such crimes as are punishable with death, there is no practical difficulty, as the sentence in any case may provide that the term shall commence after the expiration of the former term. (1 Bishop on Crim. Law, 5th ed., sec. 953.) Even in such cases, if the sentence should go into immediate effect, it is not apparent how any right of the prisoner would be violated, or what ground of complaint he would have. It certainly would be no detriment to him if he could serve out both sentences by one imprisonment. But in the case of a conviction for murder in the first degree the court is required to proceed and pass sentence which must be executed in not less than four and no more than eight weeks thereafter. (2 R. S. 658.) It matters not whether this law is directory or mandatory. It is the duty of the court to obey it; and it follows that neither the prisoner's rights nor the laws were violated in the sentence passed in this case. To hold otherwise would give a life convict unlimited license to murder without further punishment."

The legislature of our state, as in other states, provides a criminal procedure whereby the accused shall be brought to trial, and has endeavored, through the adoption of the common law, to provide against the possibility of a criminal avoiding punishment for any acts made criminal under our statutory laws or by reason of the common law. See sections 5474 and 6827, Revised Laws of Nevada. Among other sections it has provided that: "Every person, whether an inhabitant of this state, or any other state, or of a territory or district of the United

States, is liable to punishment by the laws of this state for a public offense committed by him therein, except where it is by law cognizable exclusively in the courts of the United States." (Rev. Laws, 6908.)

"There is no limitation of the time within which a prosecution for murder must be commenced. It may be commenced at any time after the death of the person killed." (Rev. Laws, 6921.)

"When it is necessary for any purpose to have a person who is in prison in any part of the state, brought before a court of criminal jurisdiction, an order for that purpose may be made by the court, and the order shall be executed by the sheriff of the county where it is made." (Rev. Laws, 7459.)

These three sections appear conclusively to our mind to disclose the legislative intent that there will be no exemption allowed to convicts, because of prior conviction, from preventing their being brought to the bar of justice for another offense while serving sentences for other crimes, if the prosecuting authorities desire to invoke the legal machinery of our state. By virtue of section 1908 "every person * * * shall be liable to punishment * * * for a public offense committed by him therein," and by virtue of section 6921 "there is no limitation of the time within which a prosecution for murder must be commenced, and by virtue of section 7459, "when it is necessary *for any purpose* to have a person who is in prison in any part of the state brought before a court of criminal jurisdiction, an order for that purpose may be made. * * * "

The petitioner is regularly indicted for murder, and a court of competent jurisdiction has ordered his presence for trial, and we can see nothing in the law, or as a matter of justice, which would preclude a convicted murderer, serving a life sentence, from being tried on another indictment for murder, if the law is properly complied with in bringing the accused to the bar of justice, such as appears to have been done in the present case. When the legislature stated in section 7459,

Revised Laws of Nevada, "when it is necessary *for any purpose* to have a person who is in prison in any part of the state brought before a court of criminal jurisdiction, an order for that purpose may be made by the court, and the order shall be executed by the sheriff of the county where it is made," it meant in its judgment that every person confined in prison could be brought before a court of competent jurisdiction for the purpose of trying him for another offense, if the order of the court so adjudged. (*Willard* v. *Superior Court*, 82 Cal. 461, 22 Pac. 1120; *Ex Parte McGuire*, 135 Cal. 342, 67 Pac. 327, 87 Am. St. Rep. 105.)

The Court of Criminal Appeals of Texas in *Gaines* v. *State*, 53 S. W. 624, speaking on this point, said: "Appellant excepted to the action of the court in having him brought from the penitentiary at Rusk (he being confined there on another case) to stand his trial in this case, it being contended that it was not competent for the state to do this. *There is nothing in this contention. While we know of no procedure authorized by legislation to bring a defendant from the penitentiary to some court for trial in another case, yet there is no law to the contrary, and such has been the usual practice; and we fail to see how a defendant can be heard to complain that the penitentiary authorities surrendered him to the local authorities for trial on some indictment pending against him.* The legislature has authorized the penitentiary board to make certain rules in regard to the conduct of the convicts confined and under their charge, and we understand the prison authorities have provided a rule recognizing the authority of district judges to issue writs for prisoners confined in the penitentiary to be brought before the court for trial in any case that may be pending against them. This would seem to be sufficient authority to bring the prisoner before the court. At any rate, in the absence of some express provision prohibiting this, we fail to see how the prisoner can complain. The constitution guarantees him a speedy trial, and at his request he would be entitled to be tried in cases pending against him, although

he might be confined in the penitentiary. On the other hand, if he should be serving a term of punishment in the penitentiary that extended over a number of years, and at the same time an indictment should be pending against him for some graver offense—it might be rape or murder—there would be no means to bring him to trial until the sentence in the case which he was serving had terminated, and perhaps in the meantime the witnesses against him might die or be so scattered as that a prosecution could not be maintained by the state."

It will be observed that there was no statutory provision for the removal of a prisoner in Texas to the local authorities pending his trial, while, on the contrary, we have an express statutory provision; yet the court in *Gaines* v. *State, supra,* rightly held that, where there was no legislative authority opposed to it, it was in consonance with justice and the fundamental principles of our criminal jurisprudence to bring before the bar of justice those accused of crime, to the end that they may be cleared if innocent, and convicted if guilty.

We cannot find any statutory authority in this state prohibiting the trial of a prisoner imprisoned for a crime committed before imprisonment, nor has any been drawn to our attention; but to the contrary, as previously stated, section 7459 of the Revised Laws expressly provides for the bringing of an incarcerated convict to court for trial.

The Supreme Court of Utah, in *People* v. *Flynn,* 7 Utah, 378, 26 Pac. 1114, in passing upon the point of whether a convict, while imprisoned for a crime committed before imprisonment, could be tried pending his incarceration, said: "The next question presented by counsel for the defendant is that the defendant had been attainted of felony, and was serving a two-year sentence in the penitentiary, previously imposed by the court, and that such period had not yet expired when this indictment was found and trial had, and that the court had no jurisdiction over the subject-matter or the person of the defendant. Section 4749, Comp. Laws, 1888,

provides that 'a sentence of imprisonment in the penitentiary for any term less than life suspends all civil rights of the person so sentenced, and forfeits all public offices, and all private trusts, authority, or power during such imprisonment.' In California, under a similar statute, it is held (*In re Nerac*, 35 Cal. 392, 95 Am. Dec. 111) that a creditor whose debtor is imprisoned in the penitentiary for a term less than life may sue and subject the property of such debtor to the satisfaction of his debt during the term of his imprisonment, and that the person so sentenced is not dead in law; that his civil rights in some matters are merely suspended, but that the rights of his creditors to sue and recover judgment against him are not suspended (*Phelps* v. *Phelps,* 7 Paige, 150), and that the forfeitures and disabilities imposed by the common law upon persons attainted of felony are not known in this country; that no consequences follow a conviction of felony, except those declared by statute. It was early held in England that persons convicted of felony, and thereby attainted, might plead the same in bar to a subsequent prosecution for any other felony, whether committed before or after the first conviction, for the reason that by his first attaint his possessions were forfeited, his blood corrupted, and he became dead in law; therefore any further conviction or attaint would be fruitless. (4 Bl. Comm. 336; 2 Hale, P. C. 250; 1 Chit. Crim. Law, 464.) This same doctrine was carried out in the case of *Crenshaw* v. *State,* 1 Mart. & Y. 122, 17 Am. Dec. 788, wherein it is held that a conviction, judgment, and execution upon one indictment for a felony not capital is a bar to all other indictments for felonies not capital, committed previous to such convictions. The doctrine, however, has seldom been followed in the United States, and the above case, though not expressly overruled, seems to be the only adjudication in this country, recognizing this doctrine. Bishop, in his Criminal Law (vol. 1, sec. 898), says: 'It was a doctrine of the English law, at the time when this country was settled, that as a general

rule, to which there were few exceptions, a person attainted for one felony could not be prosecuted criminally for another. But this doctrine, though recognized in one or two American cases, is not usually followed in this country. In England it was long abolished by an act of parliament.' In *Hawkins* v. *State,* 1 Port. (Ala.) 475, 27 Am. Dec. 641, the court holds that neither a conviction nor pardon for any particular offense can, in that state, operate as a bar or discharge of any other distinct offense; and it is now generally conceded throughout the United States that the doctrine that a conviction for another distinct felony, committed either before or after the first conviction, or while the criminal is serving out his sentence thereon, does not prevail in this country, and is as repugnant to the established principles of modern criminal law as it is supported by reason. (*Rex* v. *Vandercomb,* 1 Lead. Crim. Cas. 528; Archb. Crim. Pr., Pom. Notes, 350; *State* v. *Commissioners,* 6 N. C. 371; *State* v. *McCarty,* 1 Bay, S. C. 334; 1 Bish. Crim. Law, secs. 731–884, 898, 953.) Again, referring to Bishop's Criminal Law, the writer lays down the rule to be that, 'when a prisoner, under an unexpired sentence of imprisonment, is convicted of a second offense, or when there are two or more convictions on which sentence remains to be pronounced, the judgment may direct that each succeeding period of imprisonment shall commence on the termination of the period next preceding.' (For authorities here cited, see page 115.) In the case of *People* v. *Majors,* reported in 65 Cal. 138, 3 Pac. 597, 52 Am. Rep. 295, it is held that a person may be tried and convicted for the crime of murder, notwithstanding he is at the time of the trial and sentence serving out a previous sentence of life imprisonment for another murder, committed at the same time, and imposed by another court. So, in the case of *People* v. *Hong Ah Duck,* 61 Cal. 387, it was held that, on a trial for murder, it was competent for the prosecution to show that at the time of the homicide the defendant was a convict in the penitentiary, serving out a life sentence,

and that the homicide was committed while so imprisoned; the object being to give the jury to understand that if they found the defendant guilty of murder in the first degree, with a recommendation to imprisonment for life, and by said verdict fixed the imprisonment for life, the punishment would be no more than the defendant was then undergoing under a former conviction, and that such a verdict would be no punishment whatever, unless the jury made it punishable with death. In this territory there is no statute exempting a convict from punishment for an offense committed by him while serving out his term of punishment. Our general penal laws include all persons within their scope. The criminal is protected by the law, and is made amenable to it, while in prison, for any term of imprisonment. The statute of limitations requires prosecution for all felonies, other than murder, to be commenced within four years after the commission of the offense (Comp. Laws, 1888, sec. 4830), and, if not so commenced, the prosecution is barred. It is true an indictment may be found before the expiration of the statutory limit, and the prisoner may be arrested and tried thereon after the expiration of his term of imprisonment; but it is not difficult to discover that this practice, if inaugurated, would not only greatly delay the execution of public justice, but in many instances would prevent a speedy trial that is guaranteed to all accused persons. It would impair the necessary discipline required in public prisons, and, in a measure, become a shield and protection to the criminals therein confined."

The Supreme Court of Washington, in *Clifford* v. *Dryden*, *supra*, sustaining the construction we give our statutes bearing on this issue, that the law which provides for a trial and punishment of those who violate the laws applies equally to those serving sentence as well as others, properly observed: "It is the contention of the appellant that the superior court of Whitman County did not have authority to make the order requiring the sheriff to proceed to the penitentiary and apprehend him while in the

custody of the warden; that, said order being void, no
jurisdiction was ever acquired by the court to try the
cause; and that, therefore, the judgment of June 13, 1901,
is also void.   No authorities are submitted by the appel-
lant, but the sole argument is that the defendant could
not have a fair trial, by reason of the fact that the jury,
knowing him to be a convict, would be prejudiced against
him to such an extent that it could not do him justice.
There is nothing in the record to indicate that there was
anything in the appearance of the appellant at the trial
which would suggest to the jury the fact that he was
a convict.   But, even if there were, that would simply be
both the fault and the misfortune of the defendant, and
should not be allowed to interfere with the regular and
orderly administration of justice.   The presumption must
be that he was rightfully convicted in the preceding case.
Therefore the position in which he finds himself before
the jury is a position necessitated by his own wrong, and
he cannot plead it for the purpose of postponing or even
defeating a legitimate prosecution.   It might very reason-
ably happen, considering the difficulty of preserving and
perpetuating the testimony, that, if the second trial were
postponed until after a lengthy sentence had been served,
it would result in a failure of justice.   In this case, it is
true, the sentence was a short one; but the principle con-
tended for will apply as if the sentence were a long one.
*   *   *   The law provides generally for the trial and
punishment of its violator, and, unless such violator is
excepted from such general provisions, even though he
may be an inmate of a penitentiary, he has no just cause
for complaint."

The Supreme Court of Maryland, holding adversely to
the position of petitioner on the issue under considera-
tion, in *Rigor* v. *State,* 101 Md. 465 (61 Atl. 631, 4 Ann.
Cas. 719), says: "We now come to the grounds of error
assigned, or intended to be assigned, in the petition upon
which the record was transmitted to this court.   It is
contended that a writ of *habeas corpus* cannot be used
to bring a convict from the penitentiary into the criminal

court for trial upon an indictment there pending against him, while he is serving a sentence of imprisonment under a conviction of felony entered against him in another court of the state; and the error complained of is that the criminal court refused to quash the writ of *habeas corpus*. Assuming, for the moment, that this court has authority to review the ruling thus made, there can be no doubt as to the correctness of the court's action. A writ of *habeas corpus* will bring a convict from the penitentiary into court, not for the purpose of having the cause of his detention inquired into, but either because he may be needed as a witness, or because a pending indictment against him ought to be heard and determined. The penitentiary is not a place of sanctuary, and an incarcerated convict ought not to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt. Why should there be a delay in bringing to trial, on an indictment pending against him, a convict who has not yet completed the service of a previous sentence? No reason can be suggested for such a delay, in the case of a convict adjudged guilty of some other offense and actually in execution of a sentence thereunder, that does not apply equally to an individual who has been indicted, but has not yet been tried. The situation of the two is identical, except for the single circumstance that in the first instance the criminal who has more frequently violated the law has been tried and convicted for some of his offenses, whilst the other has not. It is not the policy of the law to encourage the commission of crime. Delay in administering the criminal law and in inflicting punishment promotes crimes, as observation and common experience abundantly demonstrate. And if the courts should hold that one already convicted and actually incarcerated under sentence could not be brought before the court on a writ of *habeas corpus*, and tried for some other offense, until the expiration of the first sentence, a temptation to commit a crime for the express purpose of escaping altogether, or at least of deferring

punishment for a previous one, would be held out to the evil-minded and depraved. Suppose, for instance, that a homicide had been committed, and the assassin. has escaped, and that for the time being a suspicion does not point to him, but is directed toward another. Suppose that the real criminal returns to the scene of the murder, and in the vicinity commits a larceny, and is arrested therefor, and pleads guilty, and is sentenced to confinement for eight or ten years in the penitentiary, and that, after beginning to serve out that sentence, evidence is discovered which indicates that he is the murderer. Suppose, further, he should, when confronted with the evidence inculpating him, confess his guilt, and that he should then be indicted for the crime of murder. Would any court hesitate to issue a writ of *habeas corpus,* directed to the warden of the penitentiary, requiring him to produce the convict, so that the latter might be put upon trial for the capital offense? Can it be possible that the court would be so hopelessly impotent, in such circumstances, as to be unable to do anything until the expiration of the sentence of eight or ten years, by which time the main witnesses might be dead, and the ends of justice might be defeated? And yet, if the contention made in the case at bar is sound, the arm of the criminal law would be paralyzed—not a step could be taken toward prosecuting him so long as the convict remained sheltered within the walls of the penitentiary. That is not the law. The criminal court had jurisdiction to bring the plaintiff in error before it under a writ of *habeas corpus* and to place him on trial under the indictment there pending against him. (*Re Wetton,* 1 Comp. & Jarvis.) In *Regina* v. *Day,* 3 F. & F. 526, it was held that the court will not grant an application for *habeas corpus* to remove a prisoner from jail, where he is undergoing sentence, in order to take him before a magistrate in another county, to prefer charge against him, but will grant a *habeas corpus* to bring him up for trial on a true bill being found against him at the assizes on that charge. (*State* v. *Wilson,* 38 Conn. 126; *People*

v. *Flynn*, 7 Utah, 378, 26 Pac. 1114; *Ex Parte Ah Men*, 77 Cal. 202, 19 Pac. 380, 11 Am. St. Rep. 263; 15 Am. & Eng. Ency. 2d ed. 191.)"

The Supreme Court of California, in consonance with the construction we place upon our statute, which is similar in California to the one in this state, on the question of whether or not one serving sentence under former conviction can be tried while incarcerated, in the case of *People* v. *Hong Ah Duck*, 61 Cal. 387, sustains the construction we are making, and recognizes the right to try a prisoner confined in the state prison for a crime committed, and even went so far as to approve of the admission of the evidence of the defendant, proving him to be an inmate of the state prison serving life imprisonment, so as to show the jury, unless they fixed the verdict of the second case at death, it would be in effect no punishment at all.

Again, the Supreme Court of California, in the case of *People* v. *Majors, supra*, which was a case very similar to the present one, in that a double murder had been committed, and the prisoner confined in the penitentiary for life, upon the issue as to whether or not he could be tried on another indictment of murder while so serving his life sentence, the defendant interposed an objection to the jurisdiction of the court to proceed with the second trial because of his present incarceration. The court answered this objection by citing the case of *People* v. *Hong Ah Duck, supra*, wherein the court sustained the right to try the defendant on another charge while serving a term on a former conviction.

We have examined with care the very able and painstaking brief of counsel for petitioner, and the authorities cited in support of his many ingenious positions taken in support of his theories; but we believe the better reasoning is with those cases we have cited on the construction we have placed on the statute of this state bearing on this issue, and that the state has the unquestioned right to proceed to try petitioner on indictment No. 2, and in the event of conviction, if the maximum sentence of the

law decreeing death is imposed, to carry the same into execution. (*Peri* v. *People*, 65 Ill. 17; *Gillespie* v. *People*, 176 Ill. 238, 52 N. E. 250; *Huffaker* v. *Com.*, 124 Ky. 115, 98 S. W. 331, 14 Ann. Cas. 487; *State* v. *Wilson*, 38 Conn. 126; *Dudley* v. *State*, 55 W. Va. 472, 47 S. E. 285; *State* v. *Keefe*, 17 Wyo. 227; 98 Pac. 122, 22 L. R. A. (N. S.) 896, 17 Ann. Cas. 161; *In re Garvey*, 7 Colo. 502, 4 Pac. 758; 9 Cyc. 876; *Clifford* v. *Dryden*, 31 Wash. 545, 72 Pac. 97; *Thomas* v. *People*, 67 N. Y. 226; Bishop, New Criminal Law, 8th ed. vol. 1, sec. 953; *Gaines* v. *State*, 53 S. W. 624; *People* v. *Flynn*, 7 Utah, 378, 26 Pac. 1114; *People* v. *Majors*, 65 Cal. 138, 3 Pac. 597, 52 Am. Rep. 295; *People* v. *Hong Ah Duck*, 61 Cal. 387; *Rigor* v. *State*, 101 Md. 465, 61 Atl. 631, 4 Ann. Cas. 719; *U. S.* v. *Farrell*, 5 Cranch, C. C. 311, Fed. Cas. No. 15,074; *Russell* v. *Com.*, 7 Serg. & R. 489; *Com.* v. *Leath*, 3 Va. 151; *Howard* v. *U. S.*, 75 Fed. 986, 21 C. C. A. 586, 34 L. R. A. 509; *Rex* v. *Wilkes*, 4 Burr. 2576.)

[2, 3] To the second main contention of counsel that petitioner is entitled to his discharge under indictment No. 2, because he was not accorded a speedy trial, we can neither concur nor give him any comfort, for the reason that the record does not disclose that the petitioner's rights in this respect were ever violated. This court has uniformly held that a continuance in a criminal case is within the discretion of the court, and unless there is an abuse of its discretion its actions will be sustained. In the present case we observe no abuse of discretion by the court which can be said to be prejudicial to petitioner's rights. (*State* v. *Chapman*, 6 Nev. 320; *State* v. *Rosemurgey*, 9 Nev. 308.) The stipulation of facts between counsel, cited heretofore, discloses that petitioner interposed no objection to the continuance of the setting of the murder charge under the second indictment. Among other facts it is agreed in said stipulation that "at the time of the making of the order by the judge of the Sixth judicial district court, Humboldt County, whereby indictment No. 2 was continued for further setting, the petitioner made no objection to the making of said order."

The fact that no objection was made by petitioner to the continuance and the order setting the case, and that the record does not disclose that he ever made an application for a speedy trial, or any trial whatever, on indictment No. 2, places him in a position wherein now he cannot complain. (*Gillespie* v. *People*, 176 Ill. 238, 52 N. E. 250; *Dudley* v, *State*, 55 W. Va. 472, 47 S. E. 285; *State* v. *Keefe*, 17 Wyo. 227, 98 Pac. 122, 22 L. R. A. (N. S.) 896, 17 Ann. Cas. 161.)

This court had occasion to consider what is a speedy trial under the constitutional guaranty and the provisions of section 582 of the old criminal practice act (Comp. Laws, 4547, as modified, Rev. Laws, 7396) in the case of *Ex Parte Stanley*, 4 Nev. 113. The rule therein stated was followed in *State* v. *McClear*, 11 Nev. 56, and in *Ex Parte Larkin*, 11 Nev. 94. The rule enunciated in the Stanley case has also been cited with approval by other courts. (*State* v. *Keefe, supra; State* v. *Wear*, 145 Mo. 218, 46 S. W. 1099; *State* v. *Goddard*, 162 Mo. 223, 62 S. W. 697; *Ex Parte State*, 76 Ala. 486; *U. S.* v. *Fox*, 3 Mont. 517.)

[4] The agreed state of facts discloses that a trial on indictment No. 2 could not be had at the May term or session of the district court in and for Humboldt County, especially in view of the fact that a change of venue was deemed necessary in the case of indictment No. 1. Why both cases were not removed at the same time does not appear. It does appear that the next term or session of court wherein trials could have been had in Humboldt County was in October, 1911, and at that term the case on indictment No. 2 was called, and the case set for trial, and subsequently removed to Washoe County on change of venue.

[5] It was held in *Gillespie* v. *People, supra*, that the statute does not apply while a defendant is in prison serving a sentence upon another charge, and to the same effect is *State* v. *Brophy*, 8 Ohio Dec. 698. We think this is the law, for the reason the rule does not exist in such cases. Undoubtedly a defendant, serving a sentence on another charge, has the right to demand that he be tried

on all indictments pending against him, and a refusal to try him might enable him to successfully invoke the statute. (*State* v. *Keefe, supra; Dudley* v. *State, supra.*)

For the foregoing reasons, the writ is denied, and the proceeding in this behalf dismissed.